## ALVAH A. HEALD versus JESSE THING.

Where the insanity of the defendant was relied upon to avoid a sale of property, a physician who, a short time before the sale, had visited the defendant in consultation with his attending physician, was not permitted to give in evidence, the declarations made to him at that time, by either the defendant's wife, physician or other attendant, as to his previous symptoms or condition; such statements were clearly inadmissible, and properly excluded as hearsay.

Nor will such witness be permitted to give his opinion of the mental condition of the defendant, at that time, based upon the representations thus made to him, in connection with the symptoms he discovered by personal observation and examination. His opinion should be formed *entirely* from his own observation and examination of his patient's symptoms and condition.

The principles, upon which the testimony of *experts* is made admissible, considered.

REPLEVIN for certain goods and chattels. The trial of the action, at April term, 1856, before MAY, J., resulted in a verdict for the plaintiff. The case is presented to the full Court on EXCEPTIONS taken by the defendant. The matter in controversy, and the rulings of the Judge at *Nisi Prius*, chiefly relied upon to support the exceptions, appear in the opinion of the Court.

*J. S. Abbott*, for plaintiff.

*Webster & Belcher*, for defendant.

[No *briefs* or minutes of the arguments of counsel are found on the files of the Reporter.]

The exceptions were argued in 1856. The following, adopted as the opinion of the Court, was drawn up by

RICE, J. — Replevin for a quantity of personal property. Writ dated March 9, 1854. To establish his title to the property described in his writ, the plaintiff introduced a bill of sale, the execution of which was in the handwriting of the defendant, and dated March 14, 1853. The defence principally relied upon was that the bill of sale was executed by the defendant at a time when, by reason of severe illness, he was insane.

To establish this point in the defence, he called Dr. Russell, a physician, who testified that he was called to consult with the attending physician, March 9, 1853, when he found the defendant sick with inflammatory fever, and deranged by reason of it, and dangerous, or in a dangerous condition. It was proved that the attending physician referred to was, at the time of the trial, without the limits of the State, and gone to parts unknown.

The counsel for the defendant then asked Dr. Russell to state what was stated to him during that consultation by the attending physician, and the wife and family of the defendant, concerning the symptoms of his disease, which was objected to by the plaintiff and excluded by the Court.

The defendant then asked the witness to give his opinion, professionally, derived from what symptoms he then discovered, in connection with what he then learned of his symptoms from his nurse or wife, and attending physician, as to the continuance or duration of his insanity, which was objected to by the plaintiff, and excluded by the Court; but the Court permitted the witness to give his opinion derived from the symptoms which he then saw.

To these rulings the defendant filed exceptions, and now contends they were erroneous.

As a general rule, witnesses are permitted to testify only to facts within their own personal knowledge. Hearsay testimony is excluded. Nor are they permitted to give their

opinions upon facts stated or proved before a jury. It is the legitimate province of the jury to make deductions from facts proved.

But to these general propositions there are exceptions. Thus when, from the nature of the case, direct testimony cannot be obtained from living witnesses, hearsay evidence may be resorted to, as in the case of dying declarations, in questions of pedigree, questions concerning public rights, and the like. So, too, as to the representations made by a sick person of the nature, symptoms and effect of the malady under which he is laboring at the time. 1 Greenl. Ev. § 102. So, also, in questions of insanity, the acts and declarations of the party, the condition of whose mind is the subject of investigation, may be given in evidence. *Wright* v. *Tatham,* 7 Adol. & El. 313.

But the declarations, sought to be proved in this case, do not fall within any of the exceptions referred to above, nor any other known to the law. They were the declarations of parties competent to be witnesses, unaccompanied by any acts pertinent to the issue then before the Court. Those declarations, if they related to facts within the knowledge of the persons making them, could only be proved by those persons themselves. As proposed to be proved, they were clearly within the description of hearsay evidence, and were properly excluded.

Another exception to the rule requiring witnesses to state only facts within their personal knowledge is found in the case of experts, who are not only allowed to state facts, like ordinary witnesses, but are also permitted to give their opinion, based upon facts within their own knowledge, or proved by other witnesses upon the stand, or upon hypothetical statements. 1 Greenl. Ev. § 440.

An *expert* is a skillful or experienced person; a person having skill, experience or peculiar knowledge on certain subjects or in certain professions; a scientific witness. Burrill's Law Dictionary.

It is contended that the Judge erred in refusing to permit

the witness Russell to give his opinion, based upon what he learned from the nurse and wife of the defendant and of the attending physician, taken in connection with his personal examination. It is asserted that the information obtained from those sources became a part of the personal examination of the witness, and, as such, formed a proper basis for a professional opinion, which would be competent and legitimate evidence in the case; and, further, that the professional skill which would authorize the witness to testify to his opinions concerning the malady of a patient whom he has examined, authorizes him also to judge of the proper sources, in connection with his personal examination, from which to derive those opinions.

The declarations of the nurse, wife and attending physician, are all clearly inadmissible and were rightly excluded as hearsay. What those declarations were, we do not know. They might have been of facts which the declarants had observed, personally, or they might have been the idle gossip of ignorant and garrulous women. It is because such hearsay cannot be subject to the ordinary tests of truth in courts of justice, that it is excluded, as too uncertain and unreliable to constitute a basis for judicial action.

But in this case, while it is admitted that the declarations above referred to were properly excluded, it is strenuously contended that an opinion based wholly upon them, (for the witness was permitted to give his opinion based upon his own examination and observation,) should go to the jury as competent evidence, upon which they would be authorized to act, on the ground that the witness, being a person of skill, is authorized to determine the proper sources, in connection with his personal examination, from which to derive those opinions.

The proposition contains two fundamental errors. First, it makes the witness decide the question of the competency of evidence, thus putting him in the place of the Court. Next, while it excludes the declarations as incompetent testimony to go to the jury, it receives, as competent evidence, an *opinion,* based upon that incompetent testimony, thus attempt-

ing to elevate the stream above the fountain, to make a corrupt tree bring forth good fruit. The declarations of the nurse and wife may have been only mere inferences on their part, and on those inferences the doctor is desired to draw an inference, and this last inference, being called the *opinion of an expert*, is made to assume the character of competent and substantial evidence. I have not been able to find any authority to sustain such propositions.

The opinion of medical men is evidence as to the state of a patient whom they have seen. Even in cases where they have not themselves seen the patient, but have heard the symptoms and particulars of his condition detailed by other witnesses at the trial, their opinion on the nature of such symptoms has been properly admitted. Thus, on a question of sanity, medical men have been permitted to form their judgment upon the representation, which witnesses at the trial have given of the conduct, manner and general appearance exhibited by the patient. 1 Phil. Ev. 290.

A physician who has not seen the patient, may, after hearing the evidence of others, be called upon to state, on his oath, the general effect of the disease described by them, and its probable consequence in the particular case. Peake's Ev. 190; 2 Russ. on Cr. 623; *Wright's case*, 1 Russ. & Ry. Cr. Ca. 456.

In the case of *Hathorn* v. *King*, 8 Mass. 371, it was decided that a physician may be inquired of whether, from the circumstances of the patient, and the symptoms they observed, they are capable of forming an opinion of the soundness of her mind, and whether, from thence they concluded her mind was sound or unsound; and, in either case, they must state the circumstances or symptoms from which they draw their conclusions. The question in this case was whether the physicians, who were present and examined the patient, should be permitted to give their *opinions;* or whether subscribing witnesses to the will, (it being on a question of the validity of a will,) only, should express opinions as to the sanity or insanity of the testatrix.

In *Dickinson* v. *Barber*, 9 Mass. 225, a question arising on the exclusion of certain depositions, the Court say:—" The deponents state no facts on which they ground their opinion. This is to be required of physicians as well as others. Juries are to judge of facts; and, although the opinion of professional gentlemen, on facts submitted to them, have justly great weight attached to them, yet they are not to be received as evidence, unless predicated upon *facts testified to, either by them or by others.*" The depositions were excluded.

In *Keith & ux.* v. *Lothrop,* 10 Cush. 453, METCALF, J., says: " The witness Smith, who was called as an expert, was rightly allowed to give the reasons for the opinion that he expressed." This point was adjudged in *Com.* v. *Webster,* 5 Cush. 301. And in *Collier* v. *Simpson,* 5 Car. & P. 73, TINDALL, C. J., ruled that counsel might ask a witness, who was called to testify as an expert, " his judgment and the grounds of it." The value of an opinion may be much increased or diminished, in the estimate of the jury, by the reasons given for it.

This is undoubtedly sound law. As a witness cannot be permitted to give his opinion as an expert, until it appears by a preliminary examination that he is a person of skill in the particular department or subject matter in which his opinion is desired; so, too, it must appear that he has reliable information, or knowledge of the facts involved, and upon which his opinion is to be founded, before he can testify as an expert. As remarked by GASTON, J., in *Clay* v. *Clavy,* 2 Iredell, 78, " unquestionably, before a witness can be received to testify as to the fact of capacity, (in a case involving mental soundness,) it must appear that he had an adequate opportunity of observing and judging of capacity."

We permit experts to testify as to the genuineness of handwriting by comparison, but, before an opinion can be given, it must be *admitted* or *proved* that the specimen with which the comparison is made is genuine. Until the genuineness of the standard specimen is established, no comparison can be made, no opinion expressed. The very foundation for the theory of

expert testimony is that of his superior knowledge in relation to the subject matter of which he is permitted to give an opinion, by which he, in a degree, assumes the functions of the jury.

This kind of evidence, though, at times, unquestionably of great value, is frequently open to observation. While the opinion of the experienced, skillful and scientific witness, who has a competent knowledge of the facts involved in the case on which he speaks, affords essential aid to Courts and juries, that of unskillful pretenders, quacks and mountebanks, who, at times, assume the character of *experts*, not unfrequently serves to becloud and lead to erroneous conclusions. The rules under which this class of testimony is received should not, in my opinion, be relaxed. Such, I believe, would be the judgment of every intelligent person who has had any considerable experience in courts of justice.

If it should be said that it cannot be known how much the opinion of the witness might have been based upon what he learned from the nurse or wife of the defendant, the answer would still be the same; the declarations of those persons, thus made, could not properly form an element in the basis of facts, upon which the witness could predicate a legal opinion, to be given as evidence before a jury.

The ruling of the Judge, being in my judgment correct, the exceptions should be overruled. *Exceptions overruled.*

Tenney, C. J., Appleton, Cutting, Goodenow, and Davis, J. J., concurred.