## WILL *v.* VILLAGE OF MENDON.

1. DEFECTIVE SIDEWALKS—LIABILITY OF MUNICIPALITY.

    It is no defense to an action against a village for injuries received from a defective sidewalk that the walk was constructed upon private property, if the care and control of the walk had in fact been assumed by the village.

2. SAME—EVIDENCE—CONTROL OF WALK.

    Evidence that a witness had repaired the walk for the village, and the proceedings of the council in relation to such repairs, are admissible as bearing on the control of the walk.

3. SAME—NOTICE OF DEFECTS.

    Evidence as to the generally defective condition of the walk for a distance of four or five rods in either direction

from the place of the accident is competent to charge the municipality with notice, even though the particular defect which caused the injury may not have been apparent to ordinary observation.

4. SAME—BIAS OF WITNESS.

It is not error in such case to permit plaintiff's counsel, upon the cross-examination of a witness for the defendant, to show that such witness has assisted in looking up testimony, and that he is a large taxpayer in the village. ·

5. PERSONAL INJURIES—EVIDENCE—PAIN AND SUFFERING.

In an action for personal injuries, evidence as to pain experienced in other parts of the body than those alleged in the declaration to have been injured is competent, if the pain is directly traceable to the injuries alleged.

6. SAME—EXCLAMATIONS OF PAIN.

Exclamations of present pain and suffering by the person injured, together with his statements as to the location, nature, and extent thereof, are admissible as original evidence.

7. SAME—PHYSICAL CONDITION OF PATIENT.

A witness who attended the injured person may testify to a numbness of the patient's limb as a fact within his observation.

8. SAME—COMPETENCY OF JUROR—NEW TRIAL.

In an action against a municipality for injuries sustained by reason of a defective sidewalk, a juror testified, upon his *voir dire*, that, while plaintiff had told him that she had been injured upon the walk, he knew nothing about the circumstances, had formed no opinion, was not prejudiced in her favor, and could try the case impartially; whereupon he was accepted as a juror. Verdict having passed for the plaintiff, defendant's counsel moved for a new trial, and, in support of his motion, submitted affidavits showing that, when advised as to the cause of the injury, such juror had asked the plaintiff why she did not sue the village, to which the plaintiff replied that she had brought suit, although she had deferred action for some time on the ground that the village had promised to settle. *Held*, that there was no error in denying the motion.

Error to St. Joseph; Loveridge, J. Submitted December 4, 1895. Decided February 7, 1896.

Case by Mary Will against the village of Mendon for

personal injuries.    From a judgment for plaintiff, defendant brings error.    Affirmed.

*H. P. Stewart* and *Howard & Roos*, for appellant.

*B. E. & L. F. Andrews* and *George L. Yaple*, for appellee.

HOOKER, J.    The plaintiff recovered a judgment for an injury suffered through a fall on a defective sidewalk by reason of being tripped by the tipping up of a board on July 4, 1889.    The defendant claims that the place where the accident occurred was land owned by a railroad company, which was used as a street, and that the city was not responsible for the injury.    There was testimony that the city assumed to control and use this land as a public street.    The court charged the jury as follows:

"I instruct you that if you are satisfied from the evidence that the defendant assumed care and control of the walk, and that it was in the care and control of the defendant at the time of the alleged accident, then, notwithstanding the fee of the soil over which the walk in question is constructed may have been in the railroad company, that fact alone would not prevent the plaintiff from recovering in this action.    If the village assumes the control of a sidewalk, it is its duty to keep it in repair."

This instruction was warranted by the cases of *O'Neil* v. *Village of West Branch*, 81 Mich. 547; *Detwiler* v. *City of Lansing*, 95 Mich. 484.    The testimony of Stevens that he repaired this walk in 1886 for the city was proper evidence upon this subject.    The same may be said of the council proceedings of December 10, 1888, with reference to repairs,    If the resolution did not cover the identical piece of walk, it tended to show that the city had assumed control of this railroad land for the highway.

The testimony of several witnesses as to the condition of the sidewalk in the vicinity of the place where the accident is alleged to have occurred was taken, subject to objection.    Mr. Young, the city lamplighter, testified that

he went over it early in 1889, and that he notified the council of the bad condition of the walk in this vicinity, and in this particular place. Witnesses were allowed to testify with reference to the condition of the walk for the distance of four or five rods north and south of the cross-walk. It is contended that this was improper, inasmuch as the accident was shown to have occurred at a point from 16 to 20 feet south of the cross-walk; that the nature of the accident, being occasioned by the tipping up of a plank, was consistent with the theory that the walk at that place was in good repair, and that the plank first became loose at the time of the accident, and, therefore, that the walk might have been in fairly good condition, and the cause of the tipping of the board might have been a defective or rusted nail, not apparent to observation. We think that this testimony was properly admitted. It may have tended to show the age and general condition, as to decay, of this piece of walk, showing that it did or did not require inspection and repair. If these boards were loose, with nails rusted and broken; if stringers and boards showed age,—it might indicate a bad condition of the walk, or at least be evidence tending to show notice of its actual condition to the city authorities. *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496.

Error is assigned upon the refusal of the court to give several instructions to the jury. An examination satisfies us that the points were covered by the charge given.

We think there is nothing in the point that a witness was cross-examined as to his interest in the case, both in relation to aiding the defendant, and the fact that he was a large taxpayer of the village.

The plaintiff testified to pains in her head and stomach, and it is claimed that this was not admissible, for the reason that the declaration did not include injury to either. Her testimony was as follows:

"I am worse in respect to my hip and spine. My spine, from the back of my neck clear down, is sore, and it is very sore in places, and I have a great deal of pain in my

head and in my hip; and sometimes there is something that
seems as if it catches me in the bottom of my foot, and it
seems to wind, and it seems to go to the back of my head,
and it makes my head ache.

"(*Mr. Howard:* We object to any testimony in regard
to the head, for there is nothing of that kind in the decla-
ration.

"(Overruled, and exception taken.

"(*Mr. Yaple:* So far as recovery is concerned, we are
limited to the declaration.)

"It makes me very sick.   It commences in that way,
and it causes me to be very sick with pain, and it causes
me to be very sick at the stomach.   There are a good
many times, if I go to church, that I have to go out be-
cause I am sick.   (Same objection as before.   Same rul-
ing, and exception.)   The sickness that I spoke of in
church would be a sharp pain in my hip and side, and
it strikes to my stomach."

The declaration alleges injury to feet, legs, side, back,
spine, and womb, by which she became sick, very lame,
diseased, and disabled, and suffered great pain.   The evi-
dence was not admitted to prove injuries to the head and
stomach, but as showing the pain suffered from the injury
to other members.   We think it was not error to admit
this testimony.

The plaintiff's husband was permitted to testify to the
complaints and statements of the plaintiff as to the
location, nature, and extent of her pain and suffering.
This was objected to as hearsay.   He was present at the
time of the accident, and cared for her afterwards.   Un-
less her exclamations and statements upon this subject
were admissible, her own testimony was the limit; and
we think his testimony was within the rule laid down in
*Hyatt* v. *Adams*, 16 Mich. 200.   Mr. Justice CHRISTIANCY
there said:

"The court did not err in admitting the evidence of ex-
clamations of pain and suffering uttered by the deceased,
and her complaints as to the nature of her suffering dur-
ing and after the operation, though some of them were in
the absence of the defendant.   This is the natural and
ordinary mode in which physical pain and suffering are

made known to others, and the only mode by which their, nature and extent can be ascertained. Such exclamations and statements are therefore original evidence; but it was, of course, open to the defendant to show, or to raise an inference, if he could, that they were feigned, or intended to deceive. They were clearly admissible as tending to show the malpractice of the defendant, though not for the purpose of aggravating the damages."

The testimony of the witness refers to statements of present, rather than relations of past, suffering.

In *Johnson* v. *McKee*, 27 Mich. 473, Mr. Justice CAMPBELL said:

"A number of errors are alleged upon the reception of testimony showing the statements by plaintiff at various times concerning his pains and bodily sufferings. These are objected to as hearsay statements, and as declarations in his own favor. So far as they were not narrations of past, as well as present, sufferings, it has been well settled that such statements of present feelings are facts which furnish the best, and often the only, evidence of such physical conditions as are not open to discovery by the sight or other senses of witnesses;" citing *Hyatt* v. *Adams, supra.*

In *Grand Rapids & Ind. R. Co.* v. *Huntley*, 38 Mich. 543, it is said:

"These statements are admitted only upon the ground that they are the natural and ordinary accompaniments and expressions of suffering. It would be impossible in most cases to know of the existence or extent or character of pain without them. They are received, therefore, as acts, rather than declarations, and admitted from necessity. The rule which admits declarations of present suffering has never been extended so as to include declarations either of past suffering, or of the causes in the past of such suffering, so as to make such statements proof of the facts. Declarations concerning the past are narratives, and not acts. Exclamations of suffering may be, and, if honest, are, parts of the occurrence itself. It is difficult to lay down any very clear line of admission or exclusion, where the exclamation refers to the feelings of the moment. But we think it would not be safe to receive such testimony in any case where it is not the

natural and ordinary expression of pain, called out without purpose, or in the course of medical treatment. The unstudied expressions of daily life, or the statements on which a medical adviser is expected to act, and which, if feigned, he should have skill enough to subject to some test of truth, stand on a footing which removes them, in general, from suspicion."

See, also, *Strudgeon* v. *Village of Sand Beach, supra,* and cases cited.

The husband was allowed to testify to numbness of the leg, which is alleged to have been beyond his knowledge. The testimony given was as follows:

"There was not any improvement in her condition during this time. She made complaints right along. Some of the complaints were about her private parts, and complaints with regard to injuries, or the way she was feeling in consequence of those injuries. She was suffering all the while in her back, hip, leg, and limb. She complained about the whole length of her back, and up between her shoulders. I don't know as she complained of any particular points, one more than another. The pain ran up between her shoulders, clear across the back, clear over her hips, and down the back, between the shoulders, and then around here on the hip. I bandaged her foot, and helped her around the room. I bathed her back and sides in the evening. I bathed the whole length of her back. We are doing that yet. I don't think she has improved at any time in respect to these injuries that I have mentioned. I think she is getting worse, if anything, in respect to the numbness of her limb.

"(*Mr. Howard:* I object to that, and move to strike that answer out, for the reason that it is a physical impossibility for the witness to tell whether the numbness in his wife's limb has increased or not.

"(*Court:* If he was nursing and rubbing, he may have observed it. I think I will deny the motion to strike out.

"(Exception taken to the ruling of the court.)

"There was numbness of her arm, and occasionally she would lose the use of it for a short time, and would drop anything and not know at the time that it left her hand, and losing a part of the sight of the right eye.

"*Q.* Did she at these times complain, or describe the pains more particularly than you have given?

"(Objected to as indefinite. Overruled, and exception taken.)

"*Q*. What did she say in that respect?

"*A*. After she was hurt, she did not complain of the sharp cutting in her foot, as I remember of, but there was pain in her limb, hip, and spine. She complained of that most all the while. She complained of nervousness and sleeplessness through the night, and pain in her right side and through her limb, and a drawing up of the foot, commencing in her foot; and it would go to the top of her head, and wake her up out of her sleep."

While it may be true that the husband could not testify to a sensation experienced by the wife, he might testify to her complaints, within the rule above stated, and this appears to be the nature of his testimony as a whole. But "numbness" is a term not limited to sensation. Webster defines the word "numb" as follows: "Infeebled in, or destitute of, the power of sensation and motion; rendered torpid," etc. Inability to move or to use the limb might be obvious to another. We think the testimony given was proper. In *Harris* v. *Railway Co.*, 76 Mich. 229, a witness was asked, "Now, from what you have seen of her, can you state whether she has the full use of her left arm?" This was held admissible as testimony of a fact which fell within the observation of the witness.

The other assignments of error relate to the denial of the motion for a new trial. The grounds of said motion will be noticed: (1) That the verdict was against the weight of evidence; (2) newly-discovered evidence; (3) incompetency of a juror. The judge denied the motion, giving reasons as follows: (1) That it was not one of the grounds mainly relied upon in the argument of the motion, and he did not consider it. (2) That reasonable diligence would have discovered the evidence alleged; that the affidavits indicate that the newly-discovered witness is not a person of good repute and credibility, and that the testimony would not be likely to influence a jury upon another trial.

The affidavits in support of the motion for new trial alleged that the juror had stated that Mrs. Will came to his house upon an occasion anterior to the trial, and, seeing that she was lame, he asked her what was the matter, and she said, "Why, don't you know I hurt my foot in the sidewalk at Mendon?" Whereupon he said, "Why don't you bring suit against the village?" and she told him that she had, and he asked, "Why did you not bring suit sooner?" and she replied that they had promised to settle, but she was not going to wait longer. He asked who her attorney was, and she told him. He was examined as to competency, and it does not appear that he refused to answer any question asked him. On such examination he said that Mrs. Will came to his house, and stopped, putting her horse in his barn, and said she was in town on business; that he asked her about it, and she told him she was injured by the defective sidewalk; that he knew nothing about the circumstances, had formed no opinion, had no prejudice in her favor, and could try the case impartially. Upon this record, we think the court committed no error in relation to the motion for new trial.

We find no error in the record, and the judgment will be affirmed.

LONG, GRANT, and MONTGOMERY, JJ., concurred. MC-GRATH, C. J., took no part in the decision.