McKORMICK v. CITY OF WEST BAY CITY.

1. Personal Injuries—Pleading—Due Care—Sufficiency of Declaration.

A declaration relating to a single transaction,—the falling of plaintiff into a hole in a sidewalk, and her attempt to extricate herself,—alleging that this occurred notwithstanding she then and there exercised all due care and caution, and was not guilty of negligence, sufficiently shows, in the absence of a demurrer, that she used such care and caution in the attempt to extricate herself.

2. Same—Trial—Remarks of Counsel.

Reference by counsel for plaintiff in his opening statement in an action for personal injuries to the fact that plaintiff has been a widow for a number of years, with several children dependent upon her for support, whom she has succeeded in keeping in school, is improper.

3. Same—Pleadings and Proofs.

A declaration in an action against a municipality for injuries sustained by reason of a defective sidewalk, alleging that plaintiff was, prior to the accident, healthy, active, and able-bodied, but that, by reason of the injuries, she has become permanently disabled, and totally incapacitated from doing any work, and will always be dependent upon others for support and maintenance, is sufficient to admit of proof of her inability to perform ordinary work, and of what she could have earned by ordinary labor.

4. Same.

Evidence that the plaintiff in such action had kept a boarding house, and had done all the cooking and manual labor about the house, before the accident, is admissible for the purpose of showing her former physical condition, although the declaration admits of no recovery for loss of the profits of such business.

5. Same—Nature of Injuries.

Plaintiff's testimony as to the existence of pain in her head is within the averments of the declaration that, by reason of the injuries, her back and spine were wounded, wrenched, and strained, and she was otherwise greatly and seriously injured, and was, and still is, subjected to great pain and suffering.

6. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—NOTICE TO AUTHORITIES—INSTRUCTIONS.

> Where it appeared, in an action against a municipality for injuries sustained by reason of a defective sidewalk, that one of the city councilmen, at noon of the day of the accident, discovered a sound plank out of the walk at the place where the accident subsequently occurred, and replaced it without nailing it, and upon the evening of the same day notified the street commissioner, it was error to permit the jury to base a finding of negligence upon the failure of such official sooner to notify the commissioner.

7. PERSONAL INJURIES — EVIDENCE — EXCLAMATIONS OF PAIN — WITNESSES.

> A physician, called to examine the plaintiff in an action for personal injuries, for the express purpose of giving testimony, is incompetent to testify to voluntary exclamations made by her, and to the fact that she seemed unable to walk without aid.

Error to Bay; Maxwell, J. Submitted June 19, 1896, Decided July 21, 1896.

Case by Mary McKormick against the city of West Bay City for personal injuries caused by a defective sidewalk. From a judgment for plaintiff, defendant brings error. Reversed.

*G. H. Francis* (*McDonell & Hall*, of counsel), for appellant.

*Hatch & Cooley*, for appellee.

MONTGOMERY, J. Plaintiff recovered a judgment of $2,000 on account of injuries sustained by a fall through a hole in a sidewalk. Defendant brings error, and has assigned error upon a large number of rulings occurring on the trial,—in the admission of testimony, and on refusals of requests to charge preferred by defendant.

1. We think the contention that the proofs do not correspond to the allegations contained in the declaration as to the manner of the injury cannot be sustained. Nor do we think that there is force in the contention

that, under the plea of the general issue, the allegation of due care and caution on the part of the plaintiff, as to her acts in attempting to extricate herself, was insufficient. The declaration was not demurred to, and relates to a single transaction,—the falling into the hole in question, and the attempt of the plaintiff to extricate herself,—and alleges that this occurred, notwithstanding the fact that the said plaintiff then and there exercised all due care and caution, and was in no way guilty of negligence. We think this allegation of diligence on her part must have been understood as relating to the entire transaction.

2. Criticism was made of the opening statement of counsel, in which it was stated that the plaintiff was left a widow 17 years ago, with six children on her hands; that most of them were dependent upon her, and that she succeeded in keeping these children in school; that plaintiff was engaged in the business of keeping a boarding house, and did all the cooking and manual labor about the house; and that by reason of the injury she was incapacitated from carrying on the business, and unable to perform household work, or do anything of that nature. It is said that, as the plaintiff had not counted on the loss of profits of running a boarding house, this must have prejudiced the jury against the defendant. The reference to the family of the plaintiff was unnecessary and improper, but the testimony of the plaintiff as to what her business had been, and what her ability to do work had been, was competent. Plaintiff's counsel expressly stated that it was offered for the purpose of showing that the plaintiff was physically able to do work for a large number of men, and as describing the kind of person she was, and what she could do. The court permitted the testimony for this purpose, but distinctly stated that nothing could be recovered for the loss of that business under the declaration. We think this testimony was admissible for this purpose.

3. The declaration alleged that prior to the accident the plaintiff was healthy, active, and able-bodied; that by reason of the injuries she was, and still is, subjected to great pain and suffering, and has been totally incapacitated from doing any work, or exercising in any manner; and that said plaintiff has become permanently disabled, and is not, and will not again be, able to work or exercise, and will always be crippled, and dependent upon others for her support and maintenance. We think these allegations sufficient to admit of proof of her inability to perform ordinary work, and of proof of what she could have earned by ordinary labor. *Kinney* v. *Folkerts*, 78 Mich. 687. The testimony as to the existence of pain in the head, we think, was sufficiently within the averments of the declaration. *Montgomery* v. *Railway Co.*, 103 Mich. 46.

4. The defendant called as a witness one Reynolds, who was an alderman of the city, and a member of the committee on streets, and he testified that on the day of the accident, on returning home to his dinner, he passed the place where the accident afterwards occurred in the evening; that he discovered that there was a plank out of the walk, and laid in the ditch; that he replaced the plank, and notified the street commissioner that evening; and that the defect was repaired the next morning. The defendant asked the court to instruct the jury as follows:

"There was no duty imposed on the witness Reynolds to repair the walk when he discovered it, on the 14th, and the plaintiff cannot recover on his failure to do so."

The court read this request to the jury, and added:

"There was no actual duty on the part of Reynolds to repair that walk, but there was a duty on him to give notice to the proper city authorities, whose duty it was to repair it with reasonable promptness."

And in his general charge the court said:

"I charge you that notice to this member of the committee was notice to the city, and from that time after-

wards—from the time he knew it—the city was liable, as
having actual notice of the defective condition of this
walk or plank; and it was bound to repair it within a
reasonable time,   *   *   *   considering the circumstances
and the place and the danger."

It is contended that, as matter of law, it should be said
that there was no unreasonable delay in the repair of
this walk after notice to the city.   We are of the opin-
ion that there was no evidence of unreasonable neglect
after the discovery of this condition of the walk by Mr.
Reynolds, in view of the measures which he took at the
time.   His testimony is that he placed the plank, which
was intact, in its former position, without nailing, and
went about his usual business during the afternoon,
and at the first opportunity, when he had leisure, noti-
fied the street commissioner of the defect.   Unless we are
to hold that he should have abandoned his work, and
sought out the street commissioner during the afternoon,
he availed himself of the very first opportunity to notify
him.   We think it would be unreasonable, in view of the
condition in which he left the walk,—the planks being all
intact,—to require that he should abandon his usual
employment for the purpose of seeking the commissioner,
to notify him.   We do not think this question should
have been submitted to the jury.   We do not lose sight
of the fact that there is a sharp conflict in the testimony
as to whether the walk was in the condition stated by the
witness Reynolds, but the charge upon this point was
based upon his testimony.   On the other hand, the plain-
tiff's witnesses claimed that for some months prior to the
accident a much more serious defect in the walk had
existed at the place where the injury occurred, and
this question was fairly submitted to the jury.   But we
are not able to say whether the jury acted upon the
showing made by the plaintiff, or, on the other hand,
was controlled by the instruction relative to the notice
to Mr. Reynolds.

5. One other ruling is deserving of notice.   The plain-

tiff called as a witness a Dr. Stevenson, who testified that two days before the trial he had examined the plaintiff in company with one Dr. Mactavish, and he further testified:

"We found that she could stand but poorly; in fact, that she could not take a step without leaning upon something solid."

Defendant's counsel then objected to this testimony, stating his objection clearly, as follows:

"Where a patient is examined by a physician with a view to giving testimony in a case, her conduct and her acts and her expressions and exclamations are incompetent. * * * When she calls in a physician with a view of making him a witness, whatever she does or says for the purpose of impressing the witness or the physician with her condition, if it is not something he deduces from her natural condition, it is incompetent, as manufactured testimony."

The court said, "I won't say it is incompetent, but it is to be very closely scrutinized." An exception was taken to this ruling, and the witness then proceeded:

"We asked her to walk, and she apparently could not walk without aid."

This was objected to, the objection overruled, and an exception taken. The witness further testified to exclamations of pain by the plaintiff while undergoing examination.

So far as expressions or acts of the plaintiff such as could be voluntarily made or simulated were testified to, the testimony was incompetent. We do not mean to hold that a physician cannot in any case testify to the physical conditions which he finds, whether in the course of treatment, or on an examination made with the express purpose of giving testimony; nor are we prepared to say that it may not be shown, in some instances, that there may be such a thing as an involuntary or mere physical cringing or shrinking from touch, such as the witness testified occurred in this case, on pressure along the

course of plaintiff's spine.  But in such case the proof
that the flinching is involuntary should be clear, and
naturally such exclamations or such acts are subject to be
carefully scrutinized, and are open to suspicion.  But in
no case is it competent to call physicians, any more than
laymen, to testify that a party indulged in exclamations
not involuntary, or that, from mere appearances, she was
unable to go through with certain physical motions.  The
general rule is well recognized that exclamations of pain,
or statements of present suffering, made by a sick person
while undergoing such pain and suffering, are admissible,
on the ground that they are the ordinary accompaniments
and expressions of suffering.  Such exclamations are re-
garded as acts, rather than declarations, and admitted
from necessity.  *Lacas* v. *Railway Co.*, 92 Mich. 416;
*Will* v. *Village of Mendon*, 108 Mich. 251, and cases
cited.  But this rule has been strictly limited, and it has
been uniformly held that statements relating to past suffer-
ing, or of the causes of suffering, are not admissible; and it
is just as firmly established that physicians or others, called
to examine or confer with the injured party with refer-
ence to the trial of a pending case, are not permitted to
testify to the exclamations made at the time, as far as
they are voluntary exclamations.  See *Grand Rapids,
etc., R. Co.* v. *Huntley*, 38 Mich. 544 (31 Am. Rep. 321);
*Jones* v. *Village of Portland*, 88 Mich. 598; *Laughlin*
v. *Railway Co.*, 80 Mich. 154.  It is suggested that
*Jones* v. *Village of Portland* rested upon a distinc-
tion between cases where the injury was direct, and cases
of negligence, and that in this respect it has been over-
ruled by *Will* v. *Village of Mendon, supra*.  There is
language in the opinion in *Jones* v. *Village of Port-
land* which is possibly susceptible of that construction,
but we can hardly conceive that the decision rested upon
such a distinction.  On the contrary, we think it is
apparent that it did not, as the court bases its ruling
upon the case of *Grand Rapids, etc., R. Co.* v.
*Huntley, supra*, which was a case of negligence, and

it is impossible to conceive how the question of the manner in which the injuries were received could determine the character of the proof requisite to show the extent of the injuries. We are constrained to hold that there was error in the admission of this testimony.

The other questions are not of sufficient importance to require extended discussion.

For the errors pointed out, the judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.