BUTTS *v.* CITY OF EATON RAPIDS.

1. DEFECTIVE SIDEWALKS—EVIDENCE—INSTRUCTIONS.

Where the plaintiff, in an action for injuries sustained by falling upon a defective sidewalk, testified that the place where she fell was only three or four feet west of a certain private walk, and her husband testified that he found the walk broken, and the boards and stringers rotted, at such point, and defendant's witnesses claimed that the defect which caused the injury was located some 12 feet west of the private walk, and consisted of a board which had been broken only a short time before the accident by a heavily-loaded wagon passing over it, but which was otherwise comparatively sound,—the court properly refused to charge that the "undisputed evidence" showed the facts to be in accord with defendant's theory.

2. SAME—NOTICE—GENERAL CONDITION—INADEQUATE REPAIRS.

Evidence that a walk in front of certain premises had been, for its full length, in a rotten and loose condition for some six months previous to an accident thereon, is admissible on the question of notice, even though it appears that some repairs were made upon the walk two months before the accident, where there is testimony tending to show that the general condition of the walk was not improved by the repairs.

3. PERSONAL INJURIES—EVIDENCE—EXCLAMATIONS OF PAIN.

Former decisions of the court upon the admissibility of evidence of exclamations of pain by a plaintiff suing for personal injuries are referred to with approval.

Error to Eaton; Smith, J.   Submitted January 4, 1898.
Decided April 5, 1898.

Case by Mary E. Butts against the city of Eaton
Rapids for personal injuries.   From a judgment for
plaintiff, defendant brings error.   Affirmed.

*C. O. Markham* and *John M. Corbin*, for appellant.

*J. B. Hendee* and *Garry C. Fox*, for appellee.

LONG, J.   This action is brought to recover damages
for injuries sustained by plaintiff which she claims to have
received by stepping upon a broken board, or by catching
her foot in a broken plank, causing her to fall.   The place
where the accident is claimed to have occurred is described
as being upon the north side of East Hamlin street, in
front of property owned by D. B. Hosler.   The declara-
tion charges that this walk in front of these premises had
been for six months in a broken, dangerous, and unsafe
condition, the planks rotten, broken, loosened, and dis-
placed; that the stringers had become rotten and decayed,
and the nails rusted and broken; that the city had due
notice and knowledge of the dangerous condition of the
walk, and, after such notice and knowledge, had sufficient
time to put the same in repair prior to the time of the in-
jury complained of.

It appears that the plaintiff, in company with one Mrs.
Lavilla Boatman, was going along this walk on the morn-
ing of October 14, 1895, when she claims the injury
occurred.   She testified:

"We were going to our work.   I stepped on a board,
and the board went down with me, and I tried to save
myself, and in some manner, I don't know, I think my
toe on the left foot caught, and it threw me, and I stum-
bled.   I tried to save himself, and it threw me very hard
against the edge of the walk."

She describes the place where she fell as being about

three or four feet west of the walk that leads up to the Hosler house. Mrs. Boatman was called as a witness for plaintiff, and testified that the place where plaintiff fell was 11 or 12 feet west of the walk that leads to the house; that she saw plaintiff fall, but could not describe. how she fell; that before the fall she had seen no broken board, but that after the fall she saw a broken board, and she and plaintiff threw it out of the walk; that the board was not broken straight across; that she visited the premises after the accident, with Mr. Butts, Mr. Hendee, and her husband, and pointed out the place, fixing it 11 or 12 feet west of the walk leading to the house. Plaintiff's husband testified that he went to the place of the accident with Mrs. Boatman and her husband. He says that he found the broken board, and a part of it thrown out, about the width of the walk west of the walk leading up to the Hosler house; that he examined this board, and found it rotten on the underside, and the stringer under it very much decayed; that this board was broken diagonally across; that he laid it down in the place it had apparently come out, and this place was where the plaintiff described the injury as having occurred. He also testified that he found other boards west of these that were loose, and tipped backward and forward when they were stepped on. There was also other testimony tending to corroborate the plaintiff in reference to the general bad condition of the walk, and which will be spoken of later.

The defendant introduced testimony tending to show that on October 12th, two days before the injury, some man whose name was unknown drove a wagon loaded with wood across this walk at the point where Mrs. Boatman testified that the accident occurred. Mrs. Hatfield, who lived in a part of the Hosler house, testified that she saw this man drive the load of wood across the walk, at about 12 feet west of the walk that leads to the Hosler house, on Saturday afternoon before the injury, about 4 o'clock. She told the man not to drive across there, as he would break the walk. When he drove across she heard

the boards crack. Mr. John Hatfield testified that he was over this walk 10 or 15 minutes after the plaintiff was injured. He saw the broken board at the point testified to by Mrs. Boatman, and saw the tracks indicating that a narrow-tired wagon had recently crossed the walk at that point; that he put in a new board there on the next day. Alderman Jenne testified that the next day after the injury he visited the place with Aldermen Miller and Crawford; that they saw where the new board had been put in; saw the wagon tracks, which were yet fresh, across the walk; and that there were no other broken boards in the walk west of the Hosler house. Mr. Boatman viewed the premises within a few minutes after the injury. He went with his wife, Mr. Hendee, and Mr. Butts. He saw the fresh wagon tracks about 11 or 12 feet west of the walk, saw the broken board there, and found no other defect. Edward Britton, the former city marshal, testified that he heard of the injury to plaintiff, and soon thereafter went over to the place; that he found the board out at the place testified to by Mrs. Boatman; that he fixed it up temporarily; that he saw the fresh wagon tracks there of a narrow-tired wagon. None of these witnesses found, as they claim, any other board out of the walk, or any defect in the walk, except at this place. It appears from the testimony that the city, in the August preceding, had notified Mr. Hosler to repair this portion of the walk, and that he had repaired it then, and that the walk was accepted by the city.

The court charged the jury that, if they found the injury occurred on account of a defect in the walk made by the passing over it of a team and loaded wagon on Saturday afternoon or evening previous to the injury, and that the city did not have actual notice or knowledge of such defect, and reasonable time after such notice or knowledge to repair it, then it would not be liable. Counsel for defendant had asked the court to charge that the undisputed evidence showed that plaintiff was injured by stepping on the plank that was broken the Saturday previous, and

that, it being in an outlying portion of the city, plaintiff could not recover. This was refused. After verdict and judgment in favor of plaintiff, a motion for new trial was made upon the ground, among others, that the verdict was against the evidence. This was denied. Claim is now made that the court should have granted a new trial for the reason above given.

We are not prepared to say that the court erred in this. There was evidence tending to show that the plaintiff was injured at a place east of the point where the wagon passed over. The plaintiff testified to it, and her husband corroborated .her testimony. He also testified that the board he found was rotten, while the other witnesses testified that the board which the wagon passed over was comparatively sound. We think the court very properly .submitted that question to the jury under the evidence produced upon the trial.

The court permitted the plaintiff to give evidence of the condition of this walk in front of the Hosler place during the fall, summer, and spring previous to the injury. It is claimed that, inasmuch as the city had caused the walk to be repaired in August previous to the injury, this testimony was misleading to the jury. There would be some force in this contention if it had not appeared by the testimony of witnesses that the walk continued to be in about the same condition after the claimed repairs were made. The witnesses testified that this walk, during the fall, summer, and spring previous to the injury, was in bad condition its entire length in front of the Hosler premises; that the boards were rotten and loose, and would rock under the foot while walking over them; that the sleepers were rotten; that the walk was built in 1882 or 1883. Testimony was then given tending to show that, while Mr. Hosler made some repairs by putting in a new board where one was badly broken, yet the general condition of the walk remained about the same when the injury was received. One of the witnesses said:

"In a few places they mended the boards where the horses went over. They put in some second-rate lumber, and repaired that. * * * They would nail down a place, and maybe in a day or two you would find that same place would roll with your feet, and, when you would go to walk, would catch your toes. You could pick up the board maybe, and turn it around. I have picked up boards, and tried to fasten them in, so I could get over carefully.

"*Q.* This continued up to the time of the accident?

"*A.* Yes, sir."

The only purpose of this testimony was to show negligence and notice to the city. The court confined it to that, and we think there was no error in permitting the plaintiff to go back over a period of six or eight months to show the walk's general bad condition.

It was not error to allow the plaintiff to show that the whole length of the walk in front of the Hosler premises was out of repair during this time. Those were the premises described in the declaration, and the claim was made that the general bad condition of the whole walk was such that the city should have found and repaired the place where the plaintiff was injured. The entire walk was all built about the same time, some 12 or 13 years before the accident. This rule is supported by *Campbell* v. *City of Kalamazoo*, 80 Mich. 660, and other cases in this court.

It is contended that the court was in error in permitting certain testimony as to exclamations of pain by the plaintiff. The injury seems to have been a very severe one. The plaintiff was confined to her house and bed for a considerable length of time. She was attended by physicians, and consented on the trial that her own physician might testify to her condition, such as he found it from his examinations. He testified to certain exclamations of pain. Other witnesses also testified to such exclamations. Many of the questions relative to this testimony were objected to on the ground that the time was too remote. We have carefully examined the whole case in reference to this testimony, and find no error in admitting it. These questions have all been passed upon heretofore, and need no

discussion here.   In *McKormick* v. *City of West Bay City*, 110 Mich. 265, the general rule is laid down as to what is admissible in such cases, and need not be repeated here.  See, also, *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496.    We find nothing in the testimony as to such exclamations but what comes within the rule there stated.

We think no other questions need be discussed.

The judgment is affirmed.

The other Justices concurred.