## LEE v. KANSAS CITY SOUTHERN RY. CO.

(District Court, W. D. Arkansas, Texarkana Division. Jan. 11, 1913.)

1. EVIDENCE (§ 548*)—MEDICAL EXPERTS—OPINIONS ON STATEMENTS MADE TO THEM.

The testimony of a physician as to statements made to him by plaintiff as to an accident in which it is claimed plaintiff was injured, and as to feelings and sensations of plaintiff subsequent to the time of the accident and prior to his examination by the doctor to qualify him to testify for plaintiff, and the doctor's opinion, based as well on such statements as on his personal examination, is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2365; Dec. Dig. § 548.*]

2. EVIDENCE (§ 548*)—MEDICAL EXPERTS—OPINIONS ON STATEMENTS MADE TO THEM.

The symptoms of neurasthenia, whether it be traumatic or acquired, being the same, and no physician being able to classify a case of neurasthenia as traumatic unless he has a history of the case, from which he can say that an accident occurred, a physician, stating that he formed his opinion from the history of the case given him by plaintiff, may not give his opinion that plaintiff is suffering from traumatic neurasthenia.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2365; Dec. Dig. § 548.*]

At Law. Action by R. M. Lee against the Kansas City Southern Railway Company. On motion by defendant to set aside verdict and grant a new trial. Motion granted.

W. H. Arnold, of Texarkana, Ark., and Sain & Sain, of Nashville, Ark., for plaintiff.

Read & McDonough, of Ft. Smith, Ark., for defendant.

YOUMANS, District Judge. There are two points in defendant's motion for a new trial which demand investigation: (1) The objection to certain testimony given by expert neurologists; and (2) the sufficiency of the evidence to sustain the verdict.

The plaintiff alleges in his complaint that he sustained an injury in a collision on the defendant's road on the 22d day of September, 1909, while he was a passenger on one of its passenger trains. He

introduced testimony tending to show that he is now, as a result of the injury sustained in that collision, suffering from a nervous disease called traumatic neurasthenia. This suit was brought on the 30th day of May, 1910.

Dr. J. L. Greene, a witness for the plaintiff, testified that he made an examination of the plaintiff on the 29th day of October, 1912. It clearly appears from the testimony that this examination was made for the purpose of qualifying the witness to testify for the plaintiff at the trial of this case. In reply to a question asking him to state what is meant by traumatic neurasthenia, Dr. Greene said:

"Neurasthenia is a word that is used to convey the idea of a condition of nerve exhaustion, or lack of nerve strength. If you put to it the qualifying 'traumatic' neurasthenia, it would mean that it was that element which had been caused by the injury. The word 'trauma,' literally means an injury. Sometimes it would be simply a bruise, but it would be a neurasthenia which would be from an injury or traumatism."

The witness stated that he had examined a quantity of plaintiff's urine, voided in the presence of the witness, and that he found in the urine neither albumen nor tube casts. By reason of their absence he came to the conclusion that the plaintiff did not have Bright's disease. He was then asked the following question:

"Now, doctor, did you then go into his history to a sufficient extent to reach a conclusion as to what his disease was?"

To this he answered:

"Why, he was suffering from neurasthenia the day I examined him."

He was then asked the following question:

"Did you reach that conclusion from a physical examination, looking at him?"

To which he answered:

"Partially physical, and depending upon his statement of his subjective symptoms."

This was objected to by the defendant. The ruling of the court on the objection was as follows:

"My ruling on that is this: That the statements made by the plaintiff to the witness will not be allowed to have with the jury any probative force. However, the witness will be allowed to state those facts which were presented to him, and upon which he based an opinion."

Further, in the course of the trial, the court instructed the jury that statements made by the plaintiff to experts in the course of their examination of him outside of the courtroom were allowed to be stated by the experts, but such statements should not have any probative force with the jury of the facts thus stated, but would be admitted to show upon what the experts based their respective opinions. To these rulings the defendant excepted. The witness was then asked to state what the plaintiff had said to him. In reply to that, the witness said:

"He gave me a history of having been present when there was a railroad accident, in September, I think it was, 1909—I am not vouching for those dates —and that he was a well, strong man up to that time, and was prosecuting

the business of an insurance solicitor, I believe; that he weighed some several pounds more than he now weighs, and that, following his experience in that railroad accident, he had had to come on him some pain thereafter, suffering neck and head and shoulder pain; that after that time he had nervousness; that he was wakeful and irritable, and unable to apply himself constantly to business, and, indeed, he did not since, or had not since, applied himself constantly; that he was weak, depressed, and miserable. Now, that would be a description of the condition that was brought out by questions and his statement—loss of physical power, loss of mental power; that he had a loss of power to apply himself, and with aches in many parts of his body; and that is what a physician, who is accustomed to hearing the story of a long train of neurasthenia, would expect to hear, and what we do hear when patients want to tell their stories, just as pain is typical, just as headache, just as pressure—just as pain is a typhoid circumstance—he had both, and loss of appetite. They all tell about the same story. Looking at the man, it was manifest that he was ill."

Continuing, the witness said:

"He told me that he was in an ordinary day coach, and I have forgotten if he told me whether it was a chair car or an ordinary seated coach, and that some of the train ran into a switch, and some of the other cars were on the siding, and immediately stopped; that he believed he was dozing, or half dozing. It was in the nighttime, if I remember correctly what he said; that the first thing he remembered he was standing in the aisle, I believe, and he said he seemed to have pain, or some pain, afterwards, perhaps within 24 hours, or within the next 24 hours had the pain developed in the back of his neck, and it radiated through his shoulder and head, and continued for some time, and he had a physician treat him for it."

Counsel for the plaintiff then stated to the witness a hypothetical question, which was objected to. This question practically restated the facts which the witness testified the plaintiff had told him at the time of the accident. The objection was overruled. Counsel for the plaintiff then asked the witness this question:

"Now, I will ask you to state, doctor, taking the statement, the hypothetical statement, that I have made to you, and your examination of this patient, and the other statement that you have already made, what your opinion is as to what disease he is suffering from?"

This question was also objected to, which objection was overruled. The answer of the witness was:

"From my examination, I think the man has a profound neurasthenia at this time. At that time, I will say I made use of the same word, 'profound;' it was neurasthenia."

It will be noted from the foregoing that the opinion of the physician was based both upon his examination and the statements made to him by the plaintiff. It appears from the testimony of this witness that neurasthenia is classified as traumatic neurasthenia and acquired neurasthenia. This classification does not depend upon symptoms, but depends upon the origin of the disease; traumatic neurasthenia being that neurasthenia which results from an injury, and acquired neurasthenia being that which arises in some other way. The question here is whether the court erred in admitting this testimony, even with the caution given to the jury as stated.

[1] In the case of Heald v. Thing, 45 Me. 392, the question arose as to the admissibility of the testimony of an expert medical witness,

based upon his examination, and the statements of the nurse, wife, and attending physician of the patient. The court said:

"The declarations of the nurse, wife and attending physician are all clearly inadmissible, and were rightly excluded as hearsay. What those declarations were we do not know. They might have been of facts which the declarants had observed personally, or they might have been the idle gossip of ignorant and garrulous women. It is because such hearsay cannot be subject to the ordinary tests of truth in courts of justice that it is excluded, as too uncertain and unreliable to constitute a basis for judicial action. But in this case, while it is admitted that the declarations above referred to were properly excluded, it is strenuously contended that an opinion based wholly upon them (for the witness was permitted to give his opinion based upon his own examination and observation) should go to the jury as competent evidence, upon which they would be authorized to act, on the ground that the witness, being a person of skill, is authorized to determine the proper sources, in connection with his personal examination, from which to derive those opinions. The proposition contains two fundamental errors: First, it makes the witness decide the question of the competency of evidence, thus putting him in the place of the court; next, while it excludes the declarations as incompetent testimony to go to the jury, it receives, as competent evidence, an opinion, based upon that incompetent testimony, thus attempting to elevate the stream above the fountain, to make a corrupt tree bring forth good fruit."

This case differs from the case at bar in that the plaintiff testified for himself substantially to the facts stated by Dr. Greene as having been related to him by the plaintiff at the time of the examination. It will be seen, however, from an examination of later authorities, that this distinction makes no difference with regard to the application of the rule.

In the case of Atchison, T. & S. F. Ry. Co. v. Frazier, 27 Kan. 463, the Supreme Court of Kansas, in an opinion delivered by Judge Brewer, said:

"It is insisted that the testimony of a physician, so far as it is expert testimony, must be based either upon personal examination, or upon the facts as proved before the jury, or else upon an hypothetical statement. Doubtless this proposition is correct. It is true that within what is meant by the phrase 'personal examination' is properly included information derived from statements by the patient of present feeling and pain. In 1 Greenleaf, par. 102, it is stated that 'the representations of a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time are received as original evidence.' See, also, the case of Bacon v. Charlton, 7 Cush. (Mass.) 581, in which it is held that anything in the nature of assertion or statement is to be carefully excluded, and the testimony confined strictly to such complaints, exclamations, and expressions or groans as usually and naturally accompany and furnish evidence of a present existing pain or malady; and generally what a patient says to the physician in describing a present bodily condition is admissible. Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437; Railroad Co. v. Sutton, 42 Ill. 438, 92 Am. Dec. 81; Earl v. Tupper, 45 Vt. 275; Towle v. Blake, 48 N. H. 92; Taylor v. Railroad Co., 48 N. H. 304, 2 Am. Rep. 229; Fort v. Brown, 46 Barb. (N. Y.) 366. So that it would have been perfectly competent for the physician to have testified, not merely to the appearance of the wound as he saw it, but also to all statements made by Mrs. Frazier as to her present bodily condition, and to have given to the jury his opinion, based upon such examination and statements. But it would not have been competent for the physician to testify to the jury as to her statements in respect to the cause of the injury, her past experience in connection with the wound, or any statements of her husband in her presence of like character. In other words, he could not give to the jury as evidence her history of the case as detailed to him outside the courtroom; neither was his opinion based upon such history of the case proper matter of evidence."

The Supreme Court of Wisconsin has passed upon this question in a number of cases. In the case of Stewart v. Everts, 76 Wis. 35, 40, 44 N. W. 1092, 1094 (20 Am. St. Rep. 17), that court said:

"The counsel for the plaintiffs in error took exceptions to the statements made by the expert witness, Dr. Clevenger. The doctor was consulted by the plaintiff after this action was commenced, for the purpose of being a witness on the trial of this action on the part of the plaintiff, and not for the purpose of medical advice or treatment. Against the objection of the defendants, this witness was permitted to detail all the statements made to him by the plaintiff of his sickness, pains, feelings, and his condition, from time to time, from the date of his injury down to the time of his consulting with him. From an examination of the plaintiff's testimony given upon the trial as to his symptoms, pains, feelings, and the condition of his health, since the accident, and the testimony of Dr. Clevenger as to his statements to him upon the subject, it will be seen that what the doctor testified to as to the statements made to him correspond almost literally with those made by the plaintiff on the trial. There was therefore no necessity that the statements made by the plaintiff to Dr. Clevenger should be detailed by him on the trial, in order that he might form a correct opinion whether the troubles of the plaintiff were properly attributable to his injuries received at the time of the accident. It will hardly be contended that the plaintiff could have introduced these statements, made by himself long after the action was commenced, as evidence on his part to prove the effect which the accident had upon his health, or to corroborate his statements made under oath as a witness on the trial of the action; and, if they were not admissible for these purposes, we fail to see how they are admissible at all, unless they were admissible in order to enable the expert witness to determine as to what was the real nature of his troubles at the time he was examined by him. It is clear that they were not admissible for the purpose of determining whether such present condition of the plaintiff was attributable to the accident, and it was mainly for that purpose that such statements were admitted. The statements of a party made in his own favor are seldom, if ever, received as evidence in his own behalf, except when they are made at such times and under such circumstances as to be a part of the res gestæ. It may be urged that this evidence could not have prejudiced the defendant, because the plaintiff made the same statements to the jury as a witness on the trial. This fact has never been held a sufficient reason for holding that the statements of the party made out of court, and not under oath, may be received in evidence on the trial. It is a method of both bolstering up or sustaining the evidence of a party which has never received the sanction of the courts, and is clearly not admissible. That this evidence was improperly received is clearly shown by the following authorities: Illinois Cent. R. Co. v. Sutton, 42 Ill. 441 [92 Am. Dec. 81]; Roosa v. Boston Loan Co., 132 Mass. 439; Railroad Co. v. Huntley, 38 Mich. 543 [31 Am. Rep. 321]; Heald v. Thing, 45 Me. 392; Quaife v. C. & N. W. R. Co., 48 Wis. 513 [4 N. W. 658, 33 Am. Rep. 821]; Kreuzinger v. C. & N. W. R. Co., 73 Wis. 158 [40 N. W. 657]. Whatever may be the rule as to the admissibility of the statements made by a party when consulting a physician or surgeon for the purpose of obtaining advice or treatment for his disease or injury, we are clear that, when such statements are made by the party after action commenced to an expert, for the sole purpose of calling such expert as a witness for himself on the trial of the action to give an opinion as to the nature of his complaint or injury and its connection with certain alleged causes, such statements are inadmissible in his own behalf. To allow such statements to be given in evidence would be to allow the party to give in evidence his declaration; made not under oath, to bolster up and confirm his statements made on the trial under oath, which all courts hold to be incompetent and not permissible. This rule of exclusion is especially applicable to the case where the person whose state of health or whose injuries are the subject of controversy is himself a competent witness in the case, and is sworn and examined in regard to his health or injuries."

The same question came before the Supreme Court of Wisconsin again in the case of Abbott v. Heath, 84 Wis. 314, 54 N. W. 574, and again in the case of Stone v. C., St. P., M. & O. R. Co., 88 Wis. 98, 59 N. W. 457, and again in the case of Keller v. Gilman, 93 Wis. 9, 66 N. W. 800,. and in each instance such testimony was held inadmissible.

In the case of Roosa v. Boston Loan Co., 132 Mass. 439, the court said:

"While a witness, not an expert, can testify only to such exclamations and complaints as indicate present existing pain and suffering, a physician may testify to a statement or narrative given by his patient in relation to his condition, symptoms, sensations, and feelings, both past and present. In both cases these declarations are admitted from necessity, because in this way only can the bodily condition of the party, who is the subject of the injury, and who seeks to obtain damages, be ascertained. But the necessity does not extend to declarations by the party as to the cause of the injury, which is the principal subject-matter of inquiry, and which may be proved by other evidence."

In the case of Penn. Co. v. Files, 65 Ohio St. 403, 62 N. E. 1047, the court said:

"The principal error assigned is on' the admission of evidence at the trial. The plaintiff introduced as a witness Dr. Bland, who testified as to an examination he had made of the plaintiff before the trial, and as to statements made by the plaintiff at that time, in regard to his suffering from the injury. This was excepted to by the defendant as incompetent, but admitted over its objection. It appeared that the examination was not made for the purpose of treating the plaintiff, but for the purpose of enabling the physician to testify as an expert at the trial. This evidence, we think, was incompetent. It is to be distinguished from evidence of a like character given by a physician called on for treatment. In such case, what the patient may say to his medical adviser as to his condition and how he suffers may be admitted. It is to be presumed in such case that he states the truth, as it is to his interest that he should do so, and not mislead the physician by false statements as to his condition. He is under a strong motive in such case to state the truth, and it is on this ground that such evidence is admitted. But where the physician is called on, not for the purpose of treatment, but to enable him to give evidence in a pending, or proposed suit, no such sanction of the truth of what he says exists; on the contrary, he is under a strong motive to deceive the physician, and, not being under oath, may with impunity make such statements as he sees fit. What he says to a physician under such circumstances is self-serving in character and should not be admitted."

In the case of McKormick v. West Bay City, 110 Mich. 265, 68 N. W. 148, the court said:

"But this rule has been strictly limited, and it has been uniformly held that statements relating to past suffering, or the causes of suffering, are not admissible; and it is just as firmly established that physicians or others, called to examine or confer with the injured party with reference to the trial of a pending case, are not permitted to testify to the exclamations made at the time, as far as they are voluntary exclamations."

In the case of Greinke v. Chicago City Ry. Co., 234 Ill. 564, 85 N. E. 327, the court said:

"The rule, however, is well settled that a physician, when called as a witness, who has not treated the injured party, but has examined him solely as a basis upon which to found an opinion to be given in a trial to recover damages for the injury sustained by the injured party, cannot testify to the state-

ments made by the injured party to him, or in his presence, during such examination, or base an opinion upon the statements of the injured party. Ill. Cent. R. Co. v. Sutton, supra; West Chicago Street Railway Co. v. Carr [170 Ill. 478, 48 N. E. 992]; West Chicago Street Railway Co. v. Kennelly, 170 Ill. 508, 48 N. E. 996; Stevens v. People, 215 Ill. 593, 74 N. E. 786. An expert witness called under such circumstances must base his opinion upon objective, and not subjective, conditions."

In the case of Shaughnessy v. Holt, 236 Ill. 485, 86 N. E. 256, 21 L. R. A. (N. S.) 826, the Supreme Court of Illinois, again passing upon the question, said:

"Counsel for appellee attempt to distinguish this case from those cited in the opinion just referred to (Greinke v. Chicago City Railway Co., 234 Ill. 564, 85 N. E. 327), on the ground that in this case appellee was first asked on the witness stand if the answers she had given the physicians during these tests were true, and she replied that they were; that, in the cases where expert testimony based upon subjective symptoms was held improper, such opinions were based upon the unsworn statements as to such subjective symptoms. Counsel misapprehend the basis of such decisions. The law admits in evidence the declarations of the injured party as to the physical condition given to a physician during treatment because it is presumed that the injured person will not falsify in his statements made to the physician when he expects and hopes to receive medical aid; but no such presumption arises where he is examined by an expert for the purpose of giving evidence in a case about to be tried. The reasons for this distinction are fully set forth in the Greinke Case, supra, and must control here."

In the case of Union Pac. R. Co. v. McMican, 194 Fed. 393, 114 C. C. A. 311, the Circuit Court of Appeals for the Eighth Circuit, in passing upon the admissibility of expert medical testimony, said:

"This evidence was clearly inadmissible, for the reason that it was based, in part at least, upon what plaintiff told the doctor at the time of the examination relative to his previous history and how the injury occurred. The rule is well settled that, where a physician is called to professionally treat a party, he may give his opinion, based upon subjective as well as objective symptoms; but where he is called, not for the purpose of treating the party for the ailment, but for the purpose of giving testimony in the case, he can only testify to objective symptoms. Statements made by the plaintiff at such examination are mere self-serving declarations, not made under oath."

As sustaining this proposition, the court cited the following cases: Shaughnessy v. Holt, 236 Ill. 485, 86 N. E. 256, 21 L. R. A. (N. S.) 826; Keller v. Gilman, 93 Wis. 9, 66 N. W. 800; Penn Co. v. Files, 65 Ohio St. 403, 62 N. E. 1047; McKormick v. West Bay, 110 Mich. 270, 68 N. W. 148; Lawson on Exp. and Op. Ev. (2d Ed.) 162, rule 30.

From the foregoing authorities it clearly appears that the testimony of Dr. J. L. Greene, in so far as it included statements made to him by the plaintiff as to the accident, and feelings and sensations subsequent to the time of the accident and prior to the examination by Dr. Greene, and the opinion of Dr. Greene, based both upon such statements and his personal examination, was inadmissible, and should not have been allowed to go to the jury.

[2] Objection was also made by the defendant to certain testimony of Dr. W. C. Green, introduced on behalf of the plaintiff. This witness did not narrate in his deposition what had been told him by the plaintiff. He does say, however, that he formed an opinion from the

history of the case given him by the plaintiff. He stated his opinion to be that the plaintiff is suffering from a disease known as traumatic neurasthenia. Since the symptoms of neurasthenia are the same, whether traumatic or acquired, no physician can classify a given case as traumatic unless he has a history from which he can say that an injury occurred. Therefore that testimony of Dr. W. C. Green was also inadmissible.

Since a new trial must be granted on account of the error of the court in admitting inadmissible testimony, it is not necessary to consider the question of the sufficiency of the evidence to sustain the verdict.

The verdict will be set aside, and a new trial granted.