## STRUDGEON v. VILLAGE OF SAND BEACH.

1. MUNICIPAL CORPORATIONS — DEFECTIVE SIDEWALKS — NOTICE — EVIDENCE.

Where the declaration in an action against a municipality for injuries sustained by reason of a defective sidewalk avers that the entire walk in front of a specified block had been allowed to become and remain in a dangerous and unsafe condition, evidence of the generally defective condition of such walk is admissible for the purpose of showing notice to the municipal authorities.

2. SAME.

In an action against a municipality for injuries from a defective sidewalk, evidence that notice was given to the corporate authorities that the walk "from the schoolhouse to the village," which included the walk on which the accident occurred, was in a dangerous condition, is admissible to charge the defendant with notice of the defect in question.

3. PERSONAL INJURIES — PHYSICAL EXAMINATION.

An order requiring the plaintiff in an action for personal injuries to submit to an examination by physicians, necessarily involving the use of anæsthetics, is properly refused.

4. SAME — EVIDENCE — EXCLAMATIONS OF PAIN.

The natural and ordinary exclamations of present pain and suffering by the plaintiff in an action for personal injuries, though made after the commencement of suit, are admissible in evidence, if the surrounding circumstances are free from suspicion. So *held* where the expressions were made by a child of tender years, in his own home, and in the presence only of the immediate members of the family.

5. WITNESSES — CONTRADICTORY STATEMENTS — SUFFICIENCY OF FOUNDATION.

A witness who, on being asked whether he met a certain person at a specified time and place, replies that he knows no such person, and, upon further inquiry, denies having had a certain conversation with any person at such time and place, may be impeached by showing that he did have such conversation with the person mentioned.

6. SAME — EXPERT TESTIMONY.

An expert witness cannot be asked whether, in his opinion, the jury would be justified in basing a verdict upon his testimony.

7. PERSONAL INJURIES—PLEADING—DAMAGES—DIMINISHED EARNING CAPACITY.

Under a declaration in an action by an infant for personal injuries, averring that plaintiff has lost the use of his right arm, and has become and will continue to be a confirmed invalid, a recovery may be had for the impairment of plaintiff's ability to pursue the ordinary vocations of life, since such result necessarily follows the injury complained of.

8. CONTRIBUTORY NEGLIGENCE—AGGRAVATION OF INJURIES.

One who, when injured through the fault of another, employs a reputable physician to treat him for so long a time as the latter shall deem necessary, and who thereafter follows the directions of such physician in caring for his injuries, cannot be charged with a negligent aggravation of damages because the result of the injury is more serious than anticipated.

9. SAME—INFANTS—QUESTION FOR JURY.

A boy 10 years of age, who is injured, while running upon a sidewalk, by stepping into a hole therein, of the existence of which he has knowledge, is not guilty of contributory negligence, as a matter of law, but it is for the jury to say whether he used such care and discretion as boys of his age usually exercise under like circumstances.

10. TRIAL—REMARKS OF COUNSEL.

A statement by plaintiff's counsel in his closing argument to the jury in an action against a municipality for personal injuries, that the corporate authorities had conspired to defeat the plaintiff's recovery, and that counsel had been threatened by witnesses for the defendant, and was a "spotted" man, because of his acting for the plaintiff, is ground for a reversal, where the only basis for the statement consists in the fact that a witness not connected with the municipal government in any way had told such counsel that he was being injured by his connection with the case, and the further fact that some of the authorities, prior to the trial, had sent for certain children, who were afterwards sworn for the defense, and put to them leading questions, to ascertain what they knew about the accident.

Error to Huron; Eldredge, J., presiding. Submitted October 25, 1895. Decided December 24, 1895.

Case by John C. Strudgeon, by his next friend, against the village of Sand Beach, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Charles L. Hall* and *Elbridge F. Bacon,* for appellant.

*W. T. Bope, John F. Murphy,* and *H. L. Chipman,* for appellee.

Montgomery, J. This is an action to recover for injuries sustained by the plaintiff by means of a defective sidewalk. The plaintiff recovered, and defendant brings error. The record contains 39 assignments of error, some of which have not been discussed in the brief of counsel. A large number are, however, relied upon. It would extend this opinion beyond any reasonable length to discuss in detail each of the assignments of error. It will suffice to say that, as to the points not specially discussed, we discover no error.

1. The declaration counted on a defective sidewalk in front of block 52, which was 264 feet in length; and plaintiff was permitted to give in evidence, against defendant's objection, the generally defective condition of the sidewalk in front of this block and in the immediate vicinity of the place where the injury occurred. This evidence was admissible for the purpose of showing notice to the village authorities. *Campbell* v. *City of Kalamazoo,* 80 Mich. 660; *O'Neil* v. *Village of West Branch,* 81 Mich. 544; *Edwards* v. *Village of Three Rivers,* 102 Mich. 156; *Fuller* v. *City of Jackson,* 92 Mich. 197; *Corcoran* v. *City of Detroit,* 95 Mich. 84.

2. Plaintiff offered testimony to show that notice was given to the street commissioner that the walk from the schoolhouse to the village was in a dangerous condition. The walk from the schoolhouse to the village included the walk in question. The testimony was competent to show notice. It was for the jury to say whether, if the commissioner had acted on this information, the performance of his duty would have led to the discovery of the defect in question.

3. At the conclusion of the testimony of Dr. Davis, who

was examined in behalf of the plaintiff, the defendant requested the court to make an order requiring the plaintiff to submit to an examination as to the condition of his arm; such examination to be made by Drs. Davis, Oldfield, and Wagener, who were the physicians employed by the plaintiff in treating the arm when it was injured. The plaintiff consented that an examination be made in open court, provided no anæsthetics or drugs or harsh methods were used; but defendant insisted that the examination should not be made in open court, and that the physicians should take such means as they deemed necessary to make a complete examination. It was apparent from the testimony of the physicians that they deemed it necessary to administer anæsthetics in order to make a complete examination. We think the circuit judge was right in refusing to require the plaintiff to submit to the administration of anæsthetics. As was said in *Graves* v. *City of Battle Creek*, 95 Mich. 266, the circuit judge is, in such cases, vested with a large discretion; and we all agree that it would have been an abuse of such discretion to make the order asked for.

4. Error is assigned on a ruling permitting the witness John Strudgeon to testify to exclamations of pain made during the pendency of the action. The general rule is well settled that declarations of present suffering are admissible in evidence, and are not objectionable as hearsay, so long as they do not amount to narrations of past conditions. *Johnson* v. *McKee*, 27 Mich. 471; *Mayo* v. *Wright*, 63 Mich. 32; *Lacas* v. *Railway Co.*, 92 Mich. 412; *Girard* v. *City of Kalamazoo*, Id. 610. But it is insisted that a different rule obtains where the exclamations are made during the pendency of the case, or after a controversy has arisen; and defendant's counsel rely upon *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537. In that case the testimony which was held inadmissible related to exclamations or statements of suffering made by the plaintiff at the time she was undergoing an examina-

tion by a physician, who was called in the expectation that he would give testimony on the trial as to the results of the examination. The court said:

"We cannot think it safe to receive such statements, which are made for the very purpose of getting up testimony, and not under ordinary circumstances. The physicians here were not called in to aid or give medical treatment. * * * They were sent for merely to enable the plaintiff to prove her case. The whole course of the plaintiff was taken to no other end. She had in her mind just what expressions her cause required. They were, therefore, made under a strong temptation to feign suffering, if dishonest, and a hardly less strong tendency, if honest, to imagine or exaggerate it."

Defendant's counsel also cite *Laughlin* v. *Street Railway Co.*, 80 Mich. 154. In that case, although the opinion does not fully set out the facts, the record shows that the exclamations of pain were made in the presence of one who had been asked to become a witness for the plaintiff, and who was called to testify to exclamations of pain made on substantially the same occasion; thus bringing the facts within the Huntley case. In the same line is *Jones* v. *Village of Portland*, 88 Mich. 598. But the court never has laid down the rule that such exclamations would be excluded solely for the reason that they were made after the controversy, and after the suit was commenced. In the present case the exclamations were made by a child of tender years, in his own home, and not in the presence of any medical attendant, and under circumstances which indicated that they were natural and ordinary exclamations of pain, called out by the suffering of the plaintiff, and not by any motive of making testimony for himself.

5. One Upton was a witness for the defense, and testified that he saw the plaintiff when he fell, and that his fall resulted from slipping on the walk; that he did not step in a hole in the walk, as he claimed, and that there was no hole there. He was asked on cross-examination

if, on the 3d of November preceding the trial, he had not had a talk with Frank Pawlowski at Roman Jaroszewski's meat market. He answered that he had spoken of it at his place, but did not remember whether Pawlowski was present or not. He then further testified as follows:

"*Q*. Now, during the same day, and shortly afterwards, did you see William Strudgeon upon the street at Leszczynski's corner, in Sand Beach?

"*A*. I don't know him, that I know of.

"*Q*. Did you meet any person there at the corner of Leszczynski's, and tell him that you saw the boy fall in a hole in the sidewalk five or six rods east of the corner of Fifth street?

"*A*. I never did. I never had any conversation with any person on the corner of Leszczynski's, to my knowledge."

On rebuttal Frank Pawlowski testified under objection as follows:

"I recollect a conversation that occurred between the witness Upton and William Strudgeon on the 3d of November last. It was on the corner at Leszczynski's store.

"*Q*. At that time, did the witness Upton say to William Strudgeon that he saw the boy, Johnnie Strudgeon, fall in a hole five or six rods east of Fifth street?

"*A*. Yes, sir."

The objection was that the attention of the witness Upton was not properly called to the conversation. It is urged that the question above quoted, put to the witness Upton, was general; but we think this objection was much too technical. The rule is that the attention of the witness must be called to the alleged contradictory statement, giving the time when, the place where, and usually the person to whom, the words are claimed to have been spoken. In this case the attention of the witness was called to the time and place and to William Strudgeon, but the witness denied any acquaintance with Strudgeon.

He must, however, have understood that the inquiry whether he had made the statement at the time and place still referred to Strudgeon. Had the effort been to show a conversation with a third party, not mentioned, the question presented would be a different one.

6. Dr. Davis was called as a witness, and on cross-examination testified:

"The examination I had before the trial in October last was not such an examination as I could give an opinion from. It was based a good deal upon his expressions of pain and finding that I could not move it. Of course, to get a perfect and clear knowledge of the facts in this case, you would have to put him under the influence of chloroform, or something of that kind. From my present means of knowledge I have here now, I would not be able to give an opinion positively."

He was then asked:

"In other words, as a surgeon, you would hardly ask us business men here, these gentlemen over at my right, to find a verdict based upon your opinion as to that boy's arm, without a full examination, would you, doctor?"

This question was excluded, under objection of plaintiff's counsel, and we think properly. It was not for the witness to determine what evidence the jury should act upon.

7. The circuit judge charged the jury as follows:

"If you find from the proofs admitted before you that the boy is permanently disabled, and rendered unable hereafter to earn as he would otherwise have been able, you should, in your good judgment, allow him therefor such sum as shall appear to you he would have been able to earn if not injured, over what he may be able to earn hereafter."

The declaration contains the averment that plaintiff has lost the use of his right arm, and has become and will continue a confirmed invalid, to his great detriment, etc. It is claimed that this declaration is not sufficiently specific to admit of recovery for the impairment of plaintiff's

ability to pursue the ordinary vocations of life, but we think it is. The fact that a boy 10 years of age has his arm permanently disabled certainly impairs his ability to earn money. It is not a special damage, but a result naturally and necessarily following upon the injury. See *Montgomery* v. *Railway Co.*, 103 Mich. 46, and cases cited; *Kinney* v. *Folkerts*, 78 Mich. 687; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Chicago, etc., R. Co.* v. *Hastings*, 136 Ill. 251; 1 Suth. Dam. p. 763. The case of *Hurst* v. *Detroit City Railway*, 84 Mich. 539, was an action by an administrator to recover damages for the death of his intestate. In such cases pecuniary loss to the next of kin are all the damages which can be recovered, and, as they do not necessarily follow from the injury, must be alleged.

8. Defendant assigns error on the refusal of the court to give the following instructions:

"The defendant can be held liable only for the natural and proximate consequence of its own negligence; and, if the plaintiff was injured, it was his duty to lessen the damages by necessary, proper, and reasonable care in treating the injury; and, if reasonable care was not used in treating the injury, and in consequence of such neglect the injury has been aggravated and the consequences increased, the defendant is not liable for the damage occasioned by such neglect and aggravation of the injury."

The court did charge the jury as follows:

"Right here counsel on both sides agree that any aggravation of the damages, occurring by reason of the negligence, if any such negligence existed, in caring for the arm after the injury, should not be allowed. I so instruct you. But if there was employed to care for his arm a reputable physician, who treated him as long as such physician deemed proper, and until he discharged himself, and from that the boy and his parents followed the directions of such physician as to the use and treatment of his arm, he cannot be charged with negligence affecting his rights in this case because the result is not as expected. But if he has negligently failed to follow directions as to the use and treatment of his arm, and

thereby his damages have been aggravated, that aggravation should be considered, and should reduce his claim."

We think this instruction to the jury was all that the defendant was entitled to have given on this subject.

9. Defendant's first request was as follows:

"The evidence in the case shows that plaintiff knew of the existence of the hole in which he claims he fell, and that at the time of the injury he was running upon the walk, in company with other boys, and did not look at the sidewalk, or take any care to avoid injury to himself, but was looking at the boy ahead of him; and that, if he had looked, or taken reasonable care, he would have seen the hole, and avoided the injury; that his neglect was such as to amount to contributory negligence upon his part, and that plaintiff cannot recover."

The circuit judge, instead of giving this request, left it for the jury to determine whether plaintiff used such care as boys of his age and discretion usually exercise on like occasions. This correctly stated the law. The request preferred implied that a prior knowledge would necessarily establish contributory negligence. Such is not the law. *Graves* v. *City of Battle Creek*, 95 Mich. 266, and cases cited.

10. Exception is taken to the language of plaintiff's counsel used in the course of his argument to the jury. The language used was as follows:

"Gentlemen of the jury, it is a mean insinuation and a defense that seems to be sustained on the part of the village to trample upon the rights of this child. You will see arrayed against this child the president of the village, and the large property owner right here, opposed to this child, and it is their right to do it; but I say, men of Huron county, that this is conspiracy on the part of this corporation to trample upon the rights of this child.

"(*Mr. Hall:* Objection, and take an exception to that.)

"I do not mean to say that Mr. Hall or Mr. Nims intimated to these children what they were to testify to, but I do mean to say that the children met there with the— The children were not brought here at the last trial. I

say the children, before they met there at Mr. Monroe's house, had the impression in their minds that they were to testify to a certain place along there.

"(*Mr. Hall:* Object to that.   There is no such evidence.

"(*The Court:* You should follow the evidence, and not lay yourself open to such objections; and they should not be made frivolously.)

"Look, gentlemen, and I will show you a vile conspiracy in this case.   Gilbert comes to my office, and says to me that by being in this case for that child, that innocent little boy, he says, 'Murphy, you are injuring yourself in Sand Beach.'

"(*Mr. Hall:* Object to that.)

"American citizens, what does that imply?   It implies that Murphy is a spotted man, and boycotted already; and why?   Because I protect a defenseless child against a powerful corporation.   Because I tried to do it, I was myself threatened by the witnesses of this corporation, and I am a spotted man.

"(*Mr. Hall:* There is no such testimony.   Object to that, and take exception.)"

Mr. Gilbert was not connected with the village government, and there is nothing to show that the municipality was in any manner responsible for what he said to Mr. Murphy.   The only basis of the statement is this:   On cross-examination of Mr. Gilbert he testified: "I haven't taken any interest in this case.   I might have told you less than two weeks ago that your connection with this case would injure you in Sand Beach.   I told you a good many things in political times."   The only foundation for a charge of conspiracy—a very grave charge, indeed, to make—is the fact that some of the village authorities sent for these girls who were witnesses, and questioned them in regard to the transaction, and put to them leading questions, for the purpose of ascertaining what they knew about the accident; and my brethren are of the opinion that this was not sufficient to justify the intemperate language employed, that the error was damag-

ing to the interests of defendant, and that the judgment should be reversed, and a new trial ordered.

The other Justices concurred.