| 120 | 127 |
|-----|-----|
| 125 | 257 |
| f125 | 375 |
| 120 | 127 |
| 127 | 14 |
| 120 | 127 |
| 135 | 7360 |
| 120 | 127 |
| 141 | 6 23 |
| 142 | 6270 |

MOTT v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO

1. RAILROAD CROSSINGS—COLLISION WITH HAND-CAR—NEGLIGENCE —QUESTION FOR JURY.

Plaintiff, in attempting, on a foggy night, to drive across a railroad track, was struck by a hand-car, and injured. In an action against the company, he claimed that he stopped his horse, and looked and listened, before passing upon the track, but that no signals were given to indicate the approach of the car. Considerable noise proceeded from an electric powerhouse near by. Under the rules of the company, the use of hand-cars at night and in foggy weather was forbidden, except in urgent cases. On the night in question, the section men had been detained in moving a track. The men claimed that warning signals were given, and that they ran the car at a rate of speed not exceeding five miles an hour, and did not see plaintiff until they collided with his vehicle. *Held*, proper to submit to the jury the questions of negligence and contributory negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.

One struck by a hand-car while crossing the main line of a railroad at night, when hand-cars are prohibited by a regulation of the company from being on its main line except in cases of urgent necessity, is not chargeable with contributory negligence because he failed to look out especially for hand-cars, where he exercised the degree of care required in looking out for trains.

3. WITNESSES—SPEED OF CARS—COMPETENCY.

Evidence that a witness has often observed bodies in motion, and has seen horses trot and run, does not render him competent to express an opinion as to the speed of a hand-car seen by him immediately before it struck a vehicle upon a crossing.

4. SAME—EXAMINATION—IMPEACHMENT.

Asking plaintiff's witness in an action for personal injuries, for the purpose of laying a foundation for her impeachment, if, in a conversation with defendant's employé, she did not make a specific statement in conflict with her testimony, does not entitle plaintiff to place before the jury the whole of the conversation referred to, including claimed admissions of

negligence on the part of the employé, prejudicial to the defendant.

5. RAILROAD COMPANIES—NEGLIGENCE—DECLARATIONS OF EMPLOYÉ —ADMISSIBILITY.

The foreman of a railroad section crew, whose hand-car collided with a vehicle in which plaintiff was riding, and injured him, cannot bind the company by subsequent admissions of negligence.

6. PERSONAL INJURIES—EXCLAMATIONS OF SUFFERING.

In an action for personal injuries, exclamations of present suffering by the person injured are admissible, though made by one of mature years to personal friends after commencement of suit, if not made in contemplation of such persons' becoming witnesses at the trial. GRANT, C. J., dissenting.

7. SAME—ARGUMENT OF COUNSEL—INTEMPERATE LANGUAGE.

In an action against a railroad company for personal injuries, plaintiff's counsel, in his argument to the jury, alluded to reputable physicians, who had testified in defendant's behalf, as "hired servants of masters, engaged to do this kind of work," and stated that "they are paid from their treasury, and go with a pass in their pockets." One of them, named Arnold, was denominated "Benedict" Arnold. *Held,* error.

8. SAME—REQUESTS TO CHARGE—ERRONEOUS MODIFICATION.

In an action for injuries received in a collision with a hand-car, it is error for the court to modify a requested instruction that "if plaintiff saw the hand-car before he reached the track, and urged his horse across the track in front of the car, then he would be guilty of contributory negligence," by inserting the word "negligently" before "urged."

9. SAME—PERMANENCY—MORTALITY TABLES—ADMISSIBILITY.

In an action for personal injuries, mortality tables, showing plaintiff's expectancy of life, are inadmissible, where there is no showing that the injuries are permanent.

Error to Shiawassee; Smith, J. Submitted January 3, 1899. Decided May 9, 1899.

Case by Daniel Mott against the Detroit, Grand Haven & Milwaukee Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

About 7:15 on the evening of October 1, 1897, plaintiff, with his horse and buggy, was driving across the defendant's track, in the city of Owosso, on Smith avenue. A section crew, consisting of five men, was coming from the east on a hand-car. It was dark and somewhat smoky and foggy. The section crew had been detained at the Corunna coal mines, in moving some tracks, and were later than usual in going home. The hand-car struck the rear wheel of the buggy, overturning it and throwing the plaintiff out. He did not see the hand-car, nor did those upon the hand-car see plaintiff's horse and buggy, until just about as the collision occurred. The forward wheels of the hand-car were derailed. Plaintiff was found upon the ground, and was taken into the power-house of an electric lighting plant near by. A physician was called to see him, examined him, and found him somewhat bruised, and his shoulder somewhat injured and partially dislocated. The physician put his arm in a sling, and plaintiff went to the home of Dr. Arnold, the local physician of the defendant. The doctor evidently did not consider it necessary to make an examination that night, and told him to come in the morning. Plaintiff started for Dr. Arnold's office in the morning, but, after going a part of the distance, returned to his house; feeling, as he testified, unable to proceed farther.

The doors of the power-house were open, and the witnesses all agree that the noise therefrom prevented one, to some extent, at least, from hearing the approach of the hand-car. Plaintiff testified that, when within about two rods of the track, he stopped a second or two, and looked and listened; that, neither seeing nor hearing anything, he proceeded, still looking up and down the track, and, just as his horse was upon the track, he saw the hand-car approach. The charge of negligence is the unreasonable speed of the hand-car, and the absence of any warning or signal of its approach. The testimony on the part of the defendant is that the speed of the car was four to five

miles an hour, and that a signal was given by the foreman as they came through the fence of the cattle-guard. The testimony on the part of the plaintiff is that the speed was much greater, and that no signal was given until just about as the accident occurred, when the foreman cried, "Look out!" Plaintiff recovered verdict and judgment for $2,000. A motion for a new trial was made,—urging, among other things, that the verdict was excessive. A new trial was denied, to which defendant took exceptions.

At the request of the defendant, the court instructed the jury as follows:

"(1) A person about to cross a railroad track is bound to recognize the danger, and to make use of the sense of hearing and of sight to ascertain, before attempting to cross, whether a hand-car is in dangerous proximity. If he ventures upon the track without doing this, it must be at his own risk; and, if he sustains injury thereby, he cannot recover, because of his contributory negligence.

"(2) A person familiar with a railroad crossing, having been frequently over it, and knowing its location, when approaching the same, is under the highest possible obligation to observe such precautions as are needful to avoid collision; and failure to do so would be contributory negligence, which would prevent a recovery for damages if an injury resulted.

"(3) One approaching a railroad track, if the view is unobstructed, must look, and, if the view is obstructed, he must stop, look, and listen; and it will be presumed that he actually saw what he could have seen if he had looked, and that he heard what he could have heard if he had listened.   *   *   *

"(6) If the jury find the plaintiff could have heard the approaching hand-car by stopping his horse and listening before reaching the railroad track, and that he failed to stop and listen, and if you find that this failure to stop and listen was the cause of his not hearing the hand-car approaching, then he would be guilty of contributory negligence, and could not recover.

"(7) If the jury find from the evidence in this case that the plaintiff could have discovered the hand-car, if he had stopped, looked, and listened for it, before he attempted to go on the track, then it was his duty to have done so; and, if you find that he failed to do so, he was

guilty of contributory negligence, and cannot recover. * * *

"(9) You are instructed that it was the duty of the plaintiff, before attempting to cross the railroad track, if it was so dark that he could not see a hand-car that might be approaching, to stop and listen; and, if you find his failure to stop and listen was the cause of his failing to discover that a hand-car was approaching, then he would be guilty of contributory negligence, and could not recover."

*Geer & Williams* (*E. W. Meddaugh*, of counsel), for appellant.

*Watson & Chapman*, for appellee.

GRANT, C. J. (*after stating the facts*). 1. Error is assigned upon the refusal of the court to direct a verdict for the defendant. We think the case was a proper one for the determination of a jury, both as to the negligence of defendant and contributory negligence on the part of the plaintiff. The rules of the corporation provide that "hand-cars * * * must not be on the main line during a fog or snowstorm, or at night, except in ·urgent cases, and then only when ordered by the road-master." It was not customary for hand-cars to be run at night. It was not, therefore, the duty of the plaintiff to be on the lookout for them. When he had exercised that degree of care required of him in looking out for trains, he had complied with the law. If it be conceded that there was no negligence in running the hand-car in the night, common prudence required those in charge to run it over the street at a very moderate rate of speed, especially in view of the darkness, and the noise made by the electric lighting plant. We are not prepared to say that it would not be negligence to run it, even at the rate of speed testified to by the witnesses for the defendant, without any warning. The weight of the car, the tools, and the men upon it, was nearly 3,000 pounds. The momentum of such a weight at five miles an hour would demolish any ordinary vehicle. The instructions quoted above were sufficiently favorable to the defendant.

2. One George Jackson was walking on the west side of the avenue, going south. As he reached the track he turned to the east side of the avenue, and then stepped off the track on the sidewalk to the south. As he was walking he neither saw nor heard anything coming on the track from the east. On his direct testimony he said:

"I don't think I was 10 feet from the hand-car when I first saw it. It had not come through the fence. I did not hear it before I saw it. I turned to see whether they would run into these people. I saw it strike the buggy on defendant's track. As I saw one I saw the other, right at the same instant, as they struck the buggy."

He further testified that he had observed bodies move and in motion a good many times, and had seen horses trot and run. Under objection and exception, he testified that in his judgment the car was going at least 12 or 15 miles an hour. On cross-examination he testified:

"I was not to exceed six feet south of the track when I heard a noise just behind me, a little to the left. I turned to the right, and saw the collision. That is all the opportunity I had to see the car. It ran from the east side of the street, where the cattle-guards are, over to the buggy, while I was turning to the right; and the first I saw of the horse and buggy was when it collided with the car. I could not tell how fast the horse was going. I knew it would be upon a trot, but at what rate of speed I couldn't say. It happened so quick I could not designate the speed they were going."

On redirect examination he testified:

"I should say the horse was going just a fair road gait,—perhaps three or four miles an hour; not running."

He further testified on recross-examination:

"I had a better chance to tell the speed of the hand-car going by me, because I could hear that. My back was towards it. The first thing I saw was when they came together. I must have discovered the speed of the horse and the car at the same time."

There was no other evidence on the speed of the car,

except circumstances and results. The judge, in his charge, gave prominence to the rate of speed; referring to it as being 14 or 15 miles an hour. Under his instruction the jury must have found that the car was running at that speed, for this is the sole reference he makes to it, and he charged that such a rate of speed would be negligence. The witness was not shown to have had sufficient experience to give his opinion as to the rate of speed, under the rule laid down in *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321). Neither was his observation sufficient to enable him to form an opinion. This evidence was inadmissible, and the court should have excluded it.

3. One Blanche Walton, a witness for the plaintiff, stood upon the sidewalk near the track at the time of the accident. On cross-examination she testified that Mr. Hughes, the section foreman in charge of the hand-car, came to see her the next morning, and that she had a conversation with him. She was then asked, "Didn't you state to him that you heard him make the outcry, 'Look out, there!' just as he was coming through the cattle-guard?" This she denied. Several questions of this character were put to the witness, but she denied having made any such statement. On redirect examination the witness was permitted, under objection and exception, to state all the conversation she had with Mr. Hughes at that time, and testified to damaging admissions made by him, the general effect of which was that he was in fault. Counsel seek to defend the admission of this testimony upon the ground that defendant's counsel had brought out a part of the conversation, and that the plaintiff was therefore entitled to the whole of it. The case is not within the rule claimed by the plaintiff. The question was asked if she did not make a specific statement, evidently for the purpose of laying the foundation for impeaching her. Mr. Hughes is not the defendant, and was in no position to make admissions binding upon the defendant, under the well-settled rule *Andrews* v. *Mining*

*Co.*, 114 Mich. 375, and cases there cited.   The matters testified to on this redirect examination had no bearing whatever upon the matters inquired into upon the cross-examination.   This testimony was very damaging, and was used in the argument of counsel to attack Mr. Hughes before the jury.

4. On the morning after the accident, plaintiff sent for one of the attorneys in this case and a physician; and suit was commenced on that day by the issuing of summons, and notice served by the attorneys upon the agent of the defendant of the assignment of the claim to them, to protect their fees.   The testimony of several of plaintiff's witnesses, who were his particular friends, to exclamations of pain, extending over a considerable period after suit was begun, was admitted, under objection.   This question received a very careful consideration in *Grand Rapids, etc., R. Co.* v. *Huntley, supra,* where Chief Justice CAMPBELL said:

" The general rule is that they [ these statements ] must have been made *ante litem motam*, which is interpreted to mean, not merely before suit brought, but before the controversy exists upon the facts."

It is evident, upon this record, that plaintiff immediately contemplated a lawsuit.   He sent for a physician and a lawyer at the same time, and the suit was commenced. It was tried first in the January following, the jury disagreeing, while the second trial was in March.   Under these circumstances, I think his exclamations should have been excluded.   All the physicians (both his own and the defendant's) testify that, applying all the customary tests, they found no evidence of any spinal trouble or permanent injury.   Moreover, his own physician testified that he remained in bed when he saw no reason why he should not get up.   It is certainly a wholesome rule which excludes such statements when a suit is pending, and the temptation to make testimony is strong.   It is suggested that this testimony was admissible under *Strudgeon* v. *Village of Sand Beach,* 107 Mich. 496.

I think not.   In that case the plaintiff was an infant of tender years.   It was there said:

" The exclamations were made by a child of tender·years, in his own home, and not·in the presence of any medical attendant, and under circumstances which indicated that they were natural and ordinary exclamations of pain, called out by the suffering of the plaintiff, and not by any motive of making testimony for himself."

This case is rather within the decision of *Laughlin* v. *Railway Co.*, 80 Mich. 154.   In that case the expressions were excluded because made "after suit was commenced, and about the time it was expected to come on for trial." So in this case the suit was pending, was being pushed as rapidly as possible, and was tried shortly after the expressions were made.   Plaintiff was a man of mature years, and, aside from his expressions, there was no evidence of any serious injury.

5. Counsel for the plaintiff, in his argument to the jury, called the two physicians who testified in behalf of the defendant "hirelings;" denouncing one of them, by the name of Arnold, as " Benedict" Arnold.   One of these had been a practicing physician for 37 years, and was a graduate of the University of Michigan and of the College of Physicians & Surgeons in New York city.    Among other things, counsel said:

" In the first place, we start out with these doctors,— hired servants of masters.   They are engaged by this defendant, and to do this kind of work for them.   They are paid from their treasury, and they go with a pass in their pockets."

We think the counsel went too far in denouncing these witnesses, within the following decisions: *Rutter* v. *Collins*, 96 Mich. 510; *Anderson* v. *Railroad Co.*, 107 Mich. 591; *Britton* v. *Railroad Co.*, 118 Mich. 491; *Geist* v. *Detroit City Railway*, 91 Mich. 446.

6. The defendant requested the court to instruct the jury as follows:

"If the jury find that the plaintiff saw the hand-car before he reached the track, and urged his horse across the

track in front of the hand-car, then he would be guilty of contributory negligence, and your verdict will be for the defendant,—'no cause of action.'"

The court gave this instruction, except that he inserted the word "negligently" before "urged." This left the question to the jury to determine whether such an act was negligent or not. There being no dispute about it, and no two inferences to be drawn from it, the question became one of law. The court should have instructed the jury that such an act would be negligence *per se*, and bar the right of recovery.

7. Plaintiff was allowed to introduce the mortality tables, which showed that plaintiff's expectancy of life was about 40 years. These tables are only admissible in a case of permanent injury, or where the suit is brought by the representatives of a deceased person. Plaintiff offered no testimony to show any permanent injury. All the physicians found no evidence of any, and he himself, upon the trial, said that he was not as bad as he used to be. This testimony should have been excluded.

It is strenuously urged by counsel that the defendant was entitled to a new trial upon the ground that the verdict was excessive. Since we have reversed the judgment on other grounds, we do not deem it necessary to discuss this one.

Many other errors are assigned upon the admission and rejection of testimony. They have all received our consideration, and we do not find any error in them.

Judgment reversed, and new trial ordered.

MONTGOMERY, J. We concur in the opinion of the Chief Justice, with the exception of what is said under the 4th heading. We think it settled by our decisions that exclamations of present suffering are admissible unless made to one in contemplation of his becoming a witness. *Will* v. *Village of Mendon*, 108 Mich. 251; *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496.

MOORE and LONG, JJ., concurred with MONTGOMERY, J. HOOKER, J., did not sit.