CHRISTINA FLAGG v. THE CHICAGO, DETROIT & CANADA GRAND TRUNK JUNCTION RAILWAY COMPANY.

*Railroad companies—Frightening horses—Erection of fences in depot grounds—Contributory negligence.*

1. A railroad company is not guilty of negligence in failing to place fences or screens along its tracks in its station grounds for the purpose of preventing the frightening of horses approaching its station.

2. The driver of a four-year-old colt who tries to hold him by the head after being backed up to the platform at a railway station, and after he has become restless and frightened at the noise of an approaching train, instead of driving away over a smooth driveway, and thus avoiding the threatened danger, is guilty of negligence;[1] citing *Geist v. Detroit City Railway,* 91 Mich. 448.

---

[1] See *Cornell v. Railway Co.,* 82 Mich. 495; *Mahan v. Clee,* 87 Id. 161; *Kalembach v. Railroad Co.,* Id. 509.

Error to St. Clair. (Canfield, J.) Argued April 28, 1893. Decided June 1, 1893.

Negligence case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*E. W. Meddaugh (Atkinson & Wolcott,* of counsel), for appellant.

*J. B. McIlwain (A. E. Chadwick,* of counsel), for plaintiff.

Long, J. Plaintiff lives at Lakeport, about 10 miles from Port Huron. On the day of the accident she was returning from a visit at Port Huron to her home. She had solicited a ride with two young men by the name of Goodman, one about 19 and the other 14 years of age. They had a light wagon, drawn by one horse. On their way they drove to Ft. Gratiot, to get from the defendant company two trunks belonging to a party in Lakeport, and for which they had the checks. The horse they were driving was four years old, but well broken. None of these parties had ever been at the depot at Ft. Gratiot, and the horse had never been driven there. The situation of the streets, railroad tracks, and buildings of the defendant company is shown by the accompanying plat on page 32.

They drove down Michigan street to the tracks, and before turning into the depot grounds the older of the two boys got out of the wagon, went to the baggage room, and saw the baggage man, who took the checks, and delivered him the two trunks, telling him to drive up to the platform to get them. He put them on a truck, and wheeled them out to the end of the platform, near the train dispatchers' office, and then returned for his horse

and wagon. The horse was driven over the first line of
tracks through the driveway, and turned round, backing
the end of the wagon to the north end of the platform,
and opposite the train dispatchers' office. The older boy
got out of the wagon, leaving his brother and the plaintiff
in the wagon. The horse became restless, and the younger
boy got out and took him by the bits. He began to rear,
when the older boy went to his head. The horse finally
started and ran northward, and, swinging to the right
across the tracks, overturned the wagon, throwing the
plaintiff out, breaking her leg, and otherwise injuring her.
The horse became frightened and unmanageable from the
noise of an approaching train coming from the rear, and
along the track on the east side of the depot. This action
was brought to recover damages for the injury thus sus-
tained by the plaintiff, and on the trial she had verdict
and judgment for $2,000.

The duty alleged in the declaration is that, if the defend-
ant had taken proper precaution to protect life and prop-
erty against such apparent danger as the operating of
engines and cars along said mentioned switching tracks, it
would have constructed and maintained a high board fence
along the westerly side of its main switching tracks from
said passenger, freight, and baggage platform, at the
southerly end of said building known as the "dispatchers'
office," etc.; or, had said defendant kept an employé or
servant at said platform to warn strangers coming there
with horses to receive or deliver freight or baggage, or to
assist in holding such teams, or maintained hitching posts
or rings for hitching horses, the accident would not have
happened. The breach of duty assigned is as follows:

"But, on the contrary, said yard, on the easterly side,
and adjoining said main switching tracks, is wholly
unfenced, and said tracks laid level with said yard for the

whole distance, and have so existed for more than a year past; while passengers desiring to take said railroad trains, or receive or deliver freight from or to said railroad, or to receive or deliver baggage transported over said railroad, are compelled to go by the route aforesaid through the yard aforesaid to said platform as the only means of access for such purposes."

There is another allegation of negligence in the declaration, but which seems to have been abandoned on the trial. It was claimed by the declaration that the train was propelled along the track with great speed, and without any warning to the plaintiff or those in charge of the horse. On the trial, when proof was offered of this fact, the court stated to counsel that he did not understand that in the operating of the train there was any negligence alleged; and counsel for plaintiff agreed with the court's views, so that we may consider that question settled and out of the case. The only questions, therefore, for our consideration are (1) whether it was negligence on the part of defendant, under the circumstances, not to have built and maintained a fence along the side of these switching tracks; and (2) whether the plaintiff was in the exercise of due care.

1. The court below, upon the first question, directed the jury that if they found that the want of such a barrier left the station grounds in a condition not reasonably safe, and plaintiff's injury would not have taken place except by reason of such insufficient condition, plaintiff and the Goodmans being in the exercise of due care, the plaintiff was entitled to recover. We think this charge was not warranted. Counsel for defendant had asked the court to instruct the jury substantially that the defendant was not bound to fence its depot grounds. This instruction should have been given. It was shown by the testimony of the station agent, and not disputed, that this ground east of the dispatchers' office and north to McNeil

creek is used for passengers to get off and on trains; also for conductors leaving trains to go to the dispatchers' office for orders. It is also used by conductors of switch engines to mark the string of cars to be disposed of. It is used by the general public in going to and from the ferry-boats plying every 15 minutes from that side of the river to Point Edward, on the opposite side. It appears that it is necessary to have that point open so that the dispatchers may have a view of the yard and of the arrival and departure of trains, and that a fence there would hinder and obstruct the making up and working of trains. On the east side of these tracks, and below the dispatchers' office, are two slip-docks where the trains are run onto the transfer boats to be carried across the river, and frequently from five hundred to a thousand cars a day are in the yard to be carried over, or have arrived in the yard from the other side of the river. The passageway for teams from Michigan street to the end of the platform opposite the dispatchers' office varies in width. Opposite the storehouse it is 77 feet wide, while opposite the dispatchers' office it is 27 feet to the tracks from the building. Across the tracks the ground is made level and smooth for people to pass over, hundreds of whom pass daily. So far as appears by this record, people have driven their teams in there with safety.

In a vast number of railway stations nearly the same state of things exists. Carriages and wagons come to these stations to meet arriving passengers. They draw up and await the arrival of the trains within a few feet of the track, and trains arrive and depart; and no one, so far as my examination has extended, has ever heretofore suggested that a railway company is guilty of negligence in not erecting a screen or fence so that horses standing there may not become frightened at approaching trains, except in the case of *Simkin v. Railway Co.*,

reported in 21 Q. B. Div. 453 (35 Amer. & Eng. R. R. Cas. 487). It appeared in that case that the plaintiffs were leaving a station belonging to the defendants, in a carriage, when the horse was frightened by the sight and sound of a locomotive engine at the station, which was blowing off steam. The horse upset the carriage, and the plaintiffs were injured. It did not appear that the engine was defective, or that it was used in an improper manner, or that the approach to the station was inconvenient; but the jury found that the defendants were guilty of negligence in not screening the railway from the roadway leading to the station, and that such negligence had caused the accident. It was said by the court:

" We cannot think that in this case there is any evidence that ought to have have been left to a jury of negligence by the defendants in not sufficiently and properly screening their railway from the road."

There is no statutory duty cast upon the defendant to place a fence alongside of its tracks, and it is quite apparent that it would not only be a great inconvenience to have such a fence there to the defendant company, but to the public generally. The duty which the defendant owed to the plaintiff was to provide a reasonably safe place of ingress to and egress from its station. Negligence would mean the omission by the defendant to do something which persons conducting a railway with reasonable care and caution should do. It cannot be said in this case that there is any such omission of duty. So far as our observation extends, no railroad company has heretofore found it necessary, in the careful management and conduct of its business, to place fences or screens along its tracks for the purpose of preventing the frightening of horses approaching its station. Where passengers are accustomed to be received upon a train, whether at the station house, at the water tank, or elsewhere, rail-

road companies are bound to keep in a safe condition for transit the ordinary space in which passengers go to and from the train, and the latter have the right to assume that the grounds adjacent to the cars, within the limits in which persons necessarily and naturally go to and from them, admit of their getting safely out and in, even on a dark night; and passengers have a right to assume that no pitfalls are left near the traveled way. In such cases it might be necessary to erect barriers to prevent persons from wandering in the dark out of the traveled way, and falling into pits and getting into dangerous places. Such are the cases cited by plaintiff's counsel. *Hulbert v. Railroad Co.,* 40 N. Y. 145; *Cross v. Railway Co.,* 69 Mich. 363. But this case is not within the rule laid down in the cases cited.

2. The plaintiff's own testimony shows that not only were the Goodman boys guilty of negligence in attempting to keep the horse at the platform when it became restless at the noise of the train approaching from the rear, but the plaintiff saw and knew the danger herself, and could have avoided it by the least care on her part. She says she saw the railroad tracks there, and, after the horse had been backed up to the platform, she says she told the boys to hurry up, as she was afraid. She had not seen or heard any train at that time, but saw the tracks, and was afraid with the little boy in the wagon with her. She had plenty of time to alight from the wagon before any train was heard. After the train was heard, she says, if the boy had done as she told him, he would have driven out, as that was what she would have done. There was nothing unusual in the noise of the train. The horse became restless from the noise of the train before it was in sight, yet the boys, instead of driving out, attempted to hold him there; and the plaintiff, knowing the danger, kept her seat in the wagon. The boys knew the way out, and from the

point where they stood it was a smooth driveway from 30 to 100 feet in width, safe to drive over. It appears that the horse first became restless and frightened from the noise, and not from the sight, of the train; and yet with a four-year-old colt, which had never been driven there before, they determined to try to hold him by the head, rather than drive out. The case falls precisely within the ruling of this Court in *Geist v. Detroit City Railway*, 91 Mich. 448. In that case the driver thought he could get across the track in front of a car going 12 to 15 miles an hour, whipped up his horses to do so, and was struck by the car. This was held to be negligence. In the present case, the plaintiff and the Goodmans saw the danger, and knew that they had a young colt not accustomed to the place and that there was a safe way out. Instead of adopting a safe course, they took their chances that they could hold the colt, and let the train pass. They miscalculated the chances, and must suffer the consequences.

We see nothing in the case warranting a new trial. The verdict and judgment below must be reversed. No new trial will be ordered.

The other Justices concurred.