McCORMICK *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

141    17
e150 [2]485

1. CARRIERS—RAILROADS—STATION PLATFORMS—CARE REQUIRED.
   A railroad company is required to exercise only reasonable care to provide a safe platform for ingress and egress to and from its station.[1]

2. EVIDENCE—NATURE OF INJURIES—OPINIONS.
   In an action for personal injuries, in which physician and nurse have testified fully as to plaintiff's condition, they should not be permitted to give their opinions as to whether plaintiff was simulating.

3. SAME—PERSONAL INJURIES—EXPRESSIONS OF PAIN.
   In an action for personal injuries, evidence of expressions of present pain are admissible though uttered by plaintiff long after the injury, and after she had decided to bring suit.

Error to Shiawassee; Smith J.    Submitted April 27, 1905.    (Docket No. 97.)    Decided July 21, 1905.

Case by Elizabeth McCormick against the Detroit, Grand Haven & Milwaukee Railway Company for per-

---

[1] As to measure of care which a carrier must exercise to keep platforms and approaches safe, see note to *Johns* v. *Charlotte, etc., R. Co.* (S. C.), 20 L. R. A. 520.

sonal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Harrison Geer*, for appellant.

*Watson & Chapman*, for appellee.

MOORE, C. J.  This is an action brought by Elizabeth McCormick to recover damages claimed to be sustained by her through falling on defendant's station platform at Corunna about 6 o'clock on the evening of the 29th day of January, 1903. The depot stands north of the track. There are no windows on either the east or west ends. On the south side and near the west end is a window, and 9 feet east of this is a door. Five feet to the east of this door is the window in the operator's room. These windows, which are about 5 feet in height and 2 feet 10 inches in width, are old style, with panes of glass in them either 8 x 12 or 6 x 12 inches in dimension. Between the depot and the company's tracks is a platform, running east and west, of some 120 feet in length. Right in front of the depot it is 22 feet in width, and consists of 8 feet of wood plank, then 6 feet of cinders, and then up to the track is another 8 feet of wood plank. It gradually becomes narrower as it runs west, and, after passing the end of the station, it runs west for some little distance at a width of 8 feet. North of this station platform, and at the west end of the wide portion, is the platform against which the omnibus backs to permit passengers to get out of or into the same. The plaintiff went to the depot in an omnibus in which there was a number of other passengers. The omnibus was backed against the steps of the platform. There were three of them, about 18 feet long and 1 foot wide, with a rise of from 4 to 6 inches each. These steps were constructed so that passengers might pass over them in going to and from the omnibus. The steps on the rear end of the omnibus would strike against the depot platform if the platform steps had not been constructed. It is not claimed the platform or platform steps were defective, but it is

claimed the platform was not properly lighted. One or two passengers alighted from the omnibus. The plaintiff then alighted. It is her claim she stepped one side to get out of the way of the other passengers, and then attempted to go forward upon the platform, caught her foot under a plank, and fell, suffering severe injuries. She recovered a judgment against defendant. The case is brought here by writ of error.

There are a good many assignments of error, but they are discussed by counsel for defendant under the following heads:

(1) The defendant is only bound to exercise ordinary care to see that its depot premises are kept and maintained in a reasonably safe condition.

(2) That plaintiff was guilty of contributory negligence.

(3) That the jury, and not medical experts, should decide whether or not a person is simulating.

(4) That exclamations of pain and suffering, uttered long after the occurrence of an injury and suit has been begun, are not admissible in evidence.

(5) That the circuit judge should have set aside the verdict and granted a new trial, for the reasons assigned in defendant's motion for a new trial.

We will discuss them in the same order.

1. It was the claim of plaintiff that there were no lights upon the platform, that any light which would reach it from the lamp in the front part of the omnibus was intercepted by the passengers who were following her out of the omnibus. It was the claim of defendant that the platform was ordinarily well lighted from the lamp in the omnibus, from the lamps in the station buildings, and from the electric lights in the street. The judge charged the jury:

" It is the duty of the defendant to use a very high degree of care to make the place where it receives passengers safe and free from danger; and if the defendant has failed to so light its platform and to use such high degree of care in keeping the point at which it received its passen-

gers safe, and if the plaintiff has been injured on account of such negligence, and without any fault on her part, then she would be entitled to recover, and your verdict would be for plaintiff."

Counsel for plaintiff say this portion of the charge should be read in connection with the paragraphs which precede it, and that it was nothing more than saying that the care the ordinary person should use under like circumstances is a high degree of care. In *Cross* v. *Railway Co.*, 69 Mich. 363, Justice MORSE, speaking for the court, said:

" This diagonal walk being a recognized way to and from the depot, it was the duty of the defendant to keep it reasonably safe. 1 Rorer on Railroads, 476; Smith on Negligence (2d Ed.), 126, 188; Cooley on Torts, .605; *Delaney* v. *Railway Co.*, 33 Wis. 67; *Hulbert* v. *Railroad Co.*, 40 N. Y. 145; *Dillaye* v. *Railroad Co.*, 56 Barb. (N. Y) 30; *Gaynor* v. *Railway Co.*, 100 Mass. 208; *Tobin* v. *Railroad Co.*, 59 Me. 183; *Hoffman* v. *Railroad Co.*, 75 N. Y. 605; *Cartwright* v. *Railway Co.*, 52 Mich. 606."

In *Flagg* v. *Railway Co.*, 96 Mich. 30 (21 L. R. A. 835), Justice LONG, speaking for the court, said:

" The duty which the defendant owed to the plaintiff was to provide a reasonably safe place of ingress to and egress from its station. Negligence would mean the omission by the defendant to do something which persons conducting a railway with reasonable care and caution should do."

See, also, *Stewart* v. *Railway Co.*, 89 Mich. 315 (17 L. R. A. 539); *Retan* v. *Railway Co.*, 94 Mich. 146; *Hiatt* v. *Railway Co.*, 96 Iowa, 169; *Robertson* v. *Railroad Co.*, 152 Mo. 382. We think the charge to the jury required too high a standard of care.

2. Can it be said as a matter of law that plaintiff was guilty of contributory negligence? This contention of the defendant is based upon the claim that plaintiff knew all about the conditions at the platform and went forward without care. It would profit no one to state in detail the

testimony.    An examination of the record satisfies us that the question of contributory negligence was one for the jury.    *Dundas* v. *City of Lansing,* 75 Mich. 499 (5 L. R. A. 143); *Argus* v. *Village of Sturgis,* 86 Mich. 344; *Graves* v. *City of Battle Creek,* 95 Mich. 266 (19 L. R. A. 641); *Sias* v. *Village of Reed City,* 103 Mich. 312; *Mackie* v. *City of West Bay City,* 106 Mich. 244; *Schwingschlegl* v. *City of Monroe,* 113 Mich. 683; *Grattan* v. *Village of Williamston,* 116 Mich. 462.

3. Was there error in allowing the medical experts to express an opinion as to whether plaintiff was simulating? The following occurred upon the trial:

" *Q.* Dr. Kennedy, in your opinion, was or was not this woman simulating?

"*A.* I do not think that this woman was simulating.
*    *    *

" *Q.* Miss Graves, in the time you were nursing and caring for Mrs. McCormick, state what you noticed, if anything, to indicate that she was not injured—that she was putting it on, malingering, or assuming it?

"*A.* She was not.    *    *    *

" *Q.* Miss Wright, during the time that you were there, from the Sunday following the accident up to the time when you went away, did you notice anything that indicated to your mind that the lady was assuming her sickness?

"*A.* No, sir.

" *Q.* Did you notice anything, at any time that you saw her, from the 29th of January until May, that you could state that would indicate that she was not sick, and that her sickness was not real?

"*A.* No, I didn't.    Her sickness appeared to be real. I have seen her occasionally since the 24th of May at her home."

Other testimony of a like character was permitted.    In the recent case of *Comstock* v. *Township of Georgetown,* 137 Mich. 558, there is a full discussion of the question involved here.    See, also, *Cole* v. *Railway Co.,* 95 Mich. 80; *McKormick* v. *City of West Bay City,* 110 Mich. 270.    The physician and nurse had been allowed to testify fully as to the condition of plaintiff, and we think

their conclusion should have been excluded, and the jury allowed to decide from the evidence whether plaintiff was simulating.

4. Did the court err in allowing evidence of exclamations of pain and suffering, uttered long after the injury and after she had decided to bring suit? In *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496, Justice MONTGOMERY, speaking for the court, said:

"Error is assigned on a ruling permitting the witness, John Strudgeon, to testify to exclamations of pain made during the pendency of the action. The general rule is well settled that declarations of present suffering are admissible in evidence, and are not objectionable as hearsay, so long as they do not amount to narrations of past conditions. *Johnson* v. *McKee*, 27 Mich. 471; *Mayo* v. *Wright*, 63 Mich. 32; *Lacas* v. *Railway Co.*, 92 Mich. 412; *Girard* v. *City of Kalamazoo*, 92 Mich. 610. But it is insisted that a different rule obtains where the exclamations are made during the pendency of the case, or after a controversy has arisen; and defendant's counsel rely upon *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537. In that case the testimony which was held inadmissible related to exclamations or statements of suffering made by the plaintiff at the time she was undergoing an examination by a physician, who was called in the expectation that he would give testimony on the trial as to the results of the examination. The court said:

"'We cannot think it safe to receive such statements, which are made for the very purpose of getting up testimony, and not under ordinary circumstances. The physicians here were not called in to aid or give medical treatment. * * * They were sent for merely to enable the plaintiff to prove her case. The whole course of the plaintiff was taken to no other end. She had in her mind just what expressions her cause required. They were, therefore, made under a strong temptation to feign suffering, if dishonest, and a hardly less strong tendency, if honest, to imagine or exaggerate it.'

"Defendant's counsel also cite *Laughlin* v. *Railway Co.*, 80 Mich. 154. In that case, although the opinion does not fully set out the facts, the record shows that the exclamations of pain were made in the presence of one who had been asked to become a witness for the plaintiff, and who was called to testify to exclamations of pain

made on substantially the same occasion; thus bringing the facts within the *Huntley Case.* In the same line is *Jones* v. *Village of Portland*, 88 Mich. 598 (16 L. R. A. 437). But the court never has laid down the rule that such exclamations would be excluded solely for the reason that they were made after the controversy, and after the suit was commenced."

See, also, *Will* v. *Village of Mendon*, 108 Mich. 251; *Mott* v. *Railway Co.*, 120 Mich. 127. We think the testimony was admissible.

For the reasons stated, we think the case must be reversed. Having reached this conclusion, it is unnecessary to express any opinion as to whether the trial judge erred in declining to grant a new trial.

Judgment is reversed, and new trial ordered.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.