**Emma C. Dean, Defendant in Error, v. Yelloway Pioneer System, Inc., Plaintiff in Error.**

**Gen. No. 8,409.**

April term, 1930.
1930.

Heard in this court at the
Opinion filed October 29,

JOHN E. CASSIDY, for plaintiff in error.

HAROLD F. TRAPP and PETER MURPHY, for defendant in error.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This writ of error is to obtain relief from a judgment of $7,500 entered by the circuit court of Logan county against plaintiff in error, Yelloway Pioneer System, Inc., a corporation, and in favor of Emma C. Dean, defendant in error.

The declaration consists of two counts. The first count avers that defendants Pioneer Stages, Inc., and Yelloway System were common carriers by motorbus from East St. Louis to Chicago; that on October 12, 1928, Sinclair Refining Company operated and maintained at Lincoln a passenger station for receiving and discharging passengers transported by said defendants.

It is also alleged that defendants Pioneer Stages and Yelloway, together with Sinclair Company, then and there possessed, maintained and used said passenger station; that on October 12, 1928, Emma C. Dean purchased from said defendants a ticket for passage by bus from Lincoln to Chicago; that on account thereof it became the duty of said defendants to exercise the highest degree of care and diligence for the safety of plaintiff while being transported in their bus, and it was the duty of defendants to exercise the highest degree of care for safety of plaintiff while she was upon the station premises, where she was received as a passenger by defendants; that defendants did not

regard their duty but permitted oil and grease to be spread upon the concrete surface of the platform station, which made it unsafe; that plaintiff, while exercising ordinary care, slipped and was injured.

The second count avers that on October 12, 1928, the Yelloway, Inc., and Pioneer Stages were common carriers by motorbus from East St. Louis to Chicago; that Sinclair Company operated and maintained a passenger station in Lincoln to receive and discharge passengers transported by said defendants.

It is also averred that defendants Pioneer Stages and Yelloway, together with Sinclair Company, possessed, maintained and used·said passenger station for receiving and discharging of passengers so transported; that plaintiff purchased a ticket from said defendants from Lincoln to Chicago; that it then and there became the duty of defendants to exercise the highest degree of care and diligence for the safety of plaintiff Dean while on the passenger station premises of said defendants. The defendants did not regard their duty and refused to accept plaintiff as a passenger and compelled plaintiff to leave the motorbus of defendants on the claim that there was not sufficient room in said bus to carry plaintiff as a passenger; and defendants negligently compelled plaintiff to leave the bus; that she so left and was on her way to the stationhouse of said defendants to exchange her ticket; that while walking upon the station platform, which was dangerous because a large amount of oil and grease and gasoline was permitted there by defendants, the plaintiff, while so walking, slipped and fell and was injured.

A general and special demurrer was interposed to the declaration by both defendant bus companies, and, upon hearing, was overruled. Plaintiff in error, Yelloway Pioneer System, Inc., thereafter filed a plea of general issue and a special plea denying ownership

and operation of the alleged station and station platform, and averred it had no supervision or control of said alleged premises where the injury occurred; that it was not a common carrier as alleged in the declaration, and did not maintain, operate or possess a business as alleged which required it to exercise the highest degree of care for plaintiff's safety upon said station platform; that it did not permit oil and grease or gasoline upon the alleged platform, and it did not possess, maintain, control, operate or supervise directly or indirectly said station platform alleged in each count.

A formal replication concluding to the contrary was filed to this plea.

During the year 1928, the Yelloway Pioneer System, Inc., a corporation, operated a system of busses for transportation of passengers, called the Yelloway Busses, between St. Louis, Chicago and Whiting, Indiana, and passing through Lincoln in Logan county, Illinois. At the intersection of Broadway and Sangamon, two business streets in Lincoln, which were both paved and intersected at right angles, the Sinclair Refining Company had a filling and service station with a concrete platform in front of it, having a right-hand and left-hand lane separated by a concrete base on which were stone pillars supporting a portico or roof over the lane nearest the building. This concrete platform slanted toward the north and east about six inches. In this filling station was a ticket office of the Yelloway Pioneer System, Inc. Previous to October 1, 1928, Mr. Cal. Wasson, who was deceased prior to the time of the trial of this case, was ticket agent for the Yelloway Pioneer System. Upon the premises at the corner of the intersection stood a large sign upon a base, which sign had painted in large letters "Yelloway, Inc., Authorized Ticket Agent, Lincoln, Illinois."

By an arrangement made by Mr. Wasson as ticket agent for the Yelloway Pioneer System in consideration of the Yelloway Busses carrying bundles of *The Evening Courier* from Lincoln to the distributor in Atlanta, eleven miles north of Lincoln, *The Lincoln Evening Courier* carried as an advertisement for the Yelloway Pioneer System, Inc., a time-table showing the time of the leaving and departure of the Yelloway Busses which advertisement bore the heading "Yelloway Pioneer System Inc. Schedules of Busses," giving the time of departure of busses both north and south and bearing statement, "All busses leave from Sinclair Filling Station, Broadway and Sangamon Streets."

When Mr. Wasson on October 1, 1928, retired from the service of the Yelloway Pioneer System, Mr. Summerskill, the traveling auditor of the Yelloway Pioneer System, Inc., prior to October 1, 1928, appointed Mr. G. A. Wilmert of Lincoln ticket agent for the Yelloway Pioneer System. Mr. Wilmert, called as a witness in behalf of the Yelloway Pioneer System, stated that preceding October 12, 1928, Mr. Summerskill stated to him that he, Wilmert, was appointed authorized agent for the Yelloway Company and at that time the tickets to be sold to passengers were delivered to him together with the stamps for stamping the tickets with the name of the Yelloway Pioneer System and a schedule of fares. Thereafter Mr. Wilmert acted as ticket agent and the Sinclair Filling Station was used as the ticket office and the passenger station office for the convenience of passengers traveling upon the busses of the defendant in error company. This filling station building had a main office in which were chairs for the comfort and convenience of passengers in the station while waiting for busses and it was supplied with rest room and toilets for men and women,

The evidence of Fred Dehner, witness for plaintiff in error, was that many busses each day stopped for the receiving and discharging of passengers, and whenever the busses required oil, gasoline or other service, they were stopped upon the concrete platform of the station and the passengers were there received or discharged.

On October 12, 1928, defendant in error, Emma C. Dean, walked to the station of the Yelloway Busses, to which she was directed upon alighting from an interurban car upon which she had come from Peoria to Lincoln. At the Yelloway ticket station she inquired as to the time of the leaving of the busses for Chicago, to return to her home in that city. After ascertaining the time of the leaving of the northbound bus she went to a restaurant in the same block and south of the bus station and had lunch, and from there went out to the Lincoln State School and Colony, located about two miles from the bus station, for the transaction of some business. She returned to the station about one o'clock and purchased her ticket for the bus, which the agent told her would be there about two o'clock. This ticket was retained by her and offered in evidence. It was ticket Number 7,163, issued by the Yelloway Pioneer System, Inc., in the usual form of the coupon tickets issued by common carriers. It provided for passage to Whiting, Indiana, as destination and specified that in issuing this ticket for transportation over the lines of carriers other than those above named, the Yelloway Pioneer System, Inc. acts as agent only. Among those above named as to which the liability of the Yelloway Pioneer System, Inc., was limited, is the Yelloway Pioneer System, Inc., plaintiff in error.

Upon the arrival of plaintiff in error's bus, defendant in error entered at the front door on the right side. She says, "When I got on the bus, I stood there a

minute and I saw everything was filled up, there was one or two places, so there was a sort of box or bench or something, I cannot remember just what, but I seated myself upon that to rest for a minute to see if everything would be filled up. The driver came on the bus and said, 'Lady, you cannot sit there, that place there is for a child.' '' She asked him where the next place was where they stopped for passengers to get off and he said ''Joliet.'' She said, ''Why did you sell me a ticket to ride on the bus when I cannot ride?'' She then got off the north end of the bus at the same place where she had gotten on, and walked on the concrete platform to the ladies' rest room at the south end. From there she started north to go to the ticket office to redeem her ticket and while walking upon the concrete platform and while almost at the step of the door to the station, her foot slipped in some slippery substance which she said was oil, and she fell heavily upon the concrete platform with her left foot under her and sustained an impacted fracture of the upper end of the femur which was slivered and splintered so that the ends of the shattered bone were impacted or driven into each other and slivered. The fragments of the bone extended over the upper end of the femur.

Daniel Curran, the manager of the Central Illinois Public Service Company, which had a station for supplying ice immediately west of the bus station, came to the place where defendant in error had fallen immediately after she fell. He is an engineer by profession and said he was familiar with lubricating oil, and he stated that there was a large spot upon the surface of the platform about three or four feet and possibly six or eight feet in diameter which he said he was pretty sure was lubricating oil; that it was oil which looked like it might have been used quite a bit and was sort of dark. He further said that a man whom he thought was George Downey, one of the proprietors

operating the filling station, was cleaning the oil up at that time and was still sweeping it when Curran's attention was directed to Mrs. Dean.

Miss Toomey, a school-teacher of the city, who was passing north on Sangamon Street toward the corner where his station was, saw defendant in error just before she fell, looked away and then heard defendant in error scream and fall and went to her assistance. Miss Toomey stated that she looked at once at the pavement and that about a square yard of the slab was covered with oil; that a man went into the office and brought out a bucket with what seemed to be ashes— a gray substance—scattered it on the oil and gathered it up.

Fred Dehner, a witness called by the Yelloway Company, testified that in servicing this bus with gasoline he was unable to determine how much gasoline was in the tank and to control the flow of it until it overflowed and that about a half a gallon of gasoline overflowed upon this concrete platform before he was able to turn it off. He said further that all of the busses of the Yelloway Company were made that way and frequently overflowed gasoline. He further stated that the gasoline always ran over for him when he serviced busses. Dehner further testified that he poured water upon the platform and swept the water off toward the northwest to the street gutter.

Defendant in error was taken in an ambulance to the hospital where she remained from October 12 until January 13 following, when she was removed to her home in Chicago. She remained in bed until May 14, after which she was pulled around in a wheel chair for a while and took her first step on July 4, 1929. Since that time she has always moved upon crutches and has been unable to walk without crutches.

The real estate title of the premises in question on the corner of Sangamon and Broadway Streets, in the

business section of Lincoln, is in William E. Hodnett. The owner leased the premises to the Sunbeam Oil Company by a written lease on January 29, 1925, for a period of ten years, lease to expire January 31, 1935. This same lease was assigned by the Sunbeam Oil Company to the Sinclair Refining Company with the written consent of the owner, Hodnett.

On October 1, 1928, the Sinclair Refining Company executed a written lease of the same premises to Gustave Wilmert and George T. Downer for a period of one year. These men were residents of Lincoln. The lease they had from the Sinclair Refining Company expressly provided the premises were to be used as a gasoline filling station. This was the status of the ownership and control of the premises at the time of the accident complained about, October 12, 1928.

There was a verdict and judgment in favor of defendant in error against the plaintiff in error, Yelloway Pioneer System, Inc., in the sum of $7,500, and plaintiff in error has brought the record, by writ of error, to this court for review. As to the other defendants the cause was dismissed.

The specific duty as to care on the part of plaintiff in error and the negligence charged is, that it was the duty of plaintiff in error to exercise the highest degree of care and diligence for the safety of defendant in error while she was upon the station premises, where she was received as a passenger, and that plaintiff in error did not regard that duty but permitted oil and grease to be spread upon the concrete surface of the platform station, which made it unsafe. In the second count the same duty is charged and the negligence: "And while walking upon the station platform, which was dangerous because a large amount of oil and grease and gasoline was permitted there by defendant." The same issue as to care and negligence went to the jury under defendant in error's first and second instructions which were given. As to where defendant

in error was at the exact time of the accident, the brief in her behalf (*supra*) states: "She then got off the north end of the bus at the same place where she had gotten on, and walked on the concrete platform to the ladies' rest room at the south end. From there she started north to go to the ticket office to redeem her ticket and while walking upon the concrete platform and almost at the step of the door to the station her foot slipped in some slippery substance which she said was oil, and she fell heavily upon the concrete platform," etc., so that defendant in error was not injured in any manner in or about the motive part or operative part of plaintiff in error's machines, but was injured upon plaintiff in error's depot platform, away from all the motive or operating part of plaintiff in error's machine, in so far as plaintiff in error may have controlled or been in the use of said oil station for a depot or depot platform, as claimed by defendant in error. In any event, plaintiff in error was not bound to use the highest degree of care in maintaining said depot and platform, but was bound to use only ordinary care. In *Davis v. South Side El. R. Co.*, 292 Ill. 378, the court passed fully upon this question and held: "The principal contention here is as to the correctness of an instruction given by the trial court in defining the care required of appellant in the maintenance and supervision of its stairway and landing. The instruction in question stated that 'in the management and operation of elevated trains and the management and maintenance of the platforms and steps and landings leading to and from said trains for the use of passengers, it is the duty of common carriers to exercise the highest degree of care, skill and diligence for the safety of their passengers consistent with the mode of conveyance adopted and its practical operation. . . .

"This precise question does not seem to have been definitely decided by this court. It has, however, been frequently discussed by text writers and decided def-

initely in other jurisdictions. The decisions are not all in harmony, though the weight of authority seems to be that as to station buildings and other appurtenances only ordinary or reasonable care is required. In *Knight v. Portland, S. & P. R. R. Co.,* 56 Me. 234, *Fremont, E. & M. V. R. R. Co. v. Hagblad,* 72 Neb. 773, and *Brackett v. Southern Railway Co.,* 88 S. C. 447, the courts stated that the highest degree of care is required on the part of a railroad company as to its station grounds, while *Kelly v. Manhattan Railway Co.,* 112 N. Y. 443, *Pennsylvania Co. v. Marion,* 104 Ind. 239, *Moreland v. Boston and Providence Railroad Co.,* 141 Mass. 31, *Christie v. Chicago, Milwaukee and St. Paul Railway Co.,* 61 Minn. 161, *Falls v. San Francisco and Northern Pacific Railroad Co.,* 97 Cal. 114, *McCormick v. D., G. H. & M. Ry. Co.,* 141 Mich. 17, *Hiatt v. D. M., N. &. W. Ry. Co.,* 96 Iowa 169, and *Chicago, Rock Island and Pacific Railway Co. v. Owens,* 118 Ark. 467, all hold that as to stations and other appurtenances only ordinary or reasonable care is required on the part of the owners.

" 'The duty respecting the construction and maintenance of station buildings is not so rigorous as that imposed upon railroad carriers in relation to roadbeds, tracks, cars, appliances and the like. Some of the cases seem to lose sight of the difference between the duty respecting station buildings and that respecting means and modes of conveyance, but the well-reasoned cases recognize the distinction and affirm that a railroad company that exercises ordinary care in constructing and maintaining station buildings and appurtenances in a reasonably safe condition for use is not guilty of negligence. There is really no valid reason why a railroad company should be held to a higher degree of care in maintaining its station buildings than that to which an individual owner of buildings used for ordinary business purposes is held. The

reasoning of the cases which laid the foundation for the strict American doctrine as to the degree of care required of carriers using steam as a motive power cannot, it is obvious, have any application to buildings and structures prepared for the use of travelers.' (4 Elliott on Railroads,—2d ed.—sec. 1590.) See to the same effect, 3 Thompson on Negligence (ed. of 1902), sec. 2748; 2 Hutchinson on Carriers (3d ed.), sec. 941; 6 Cyc. 605; 10 Corpus Juris, sec. 1341, and cases there cited. The rule is frequently laid down that the degree of care owed to the passenger is justly lessened to the extent of the lessening of the danger involved; that the care required should be commensurate with the danger involved. (*Taylor v. Pennsylvania Railroad Co.*, 50 Fed. 755.) A lengthy review of the authorities is found in a note to *St. Louis, Iron Mountain and Southern Railway Co. v. Woods*, 33 L. R. A. (N. S.) (Ark.) 855, and *Johns v. Charlotte, C. & A. R. R. Co.*, 20 L. R. A. (S. C.) 520. 'The degree of care is not fixed solely by the relation of carriers and passengers. It is measured by the consequences which may follow the want of care. A railroad company is held to the highest degree of care in respect to the condition and management of its engines and cars, because negligence in that respect involves extreme peril to passengers, against which they cannot protect themselves. It would not act reasonably if it did not exercise greater care in equipping and running its trains than in regard to the condition of its station grounds.' *Moreland v. Boston and Providence Railroad Co., supra*, p. 33. . . .

"There is reason and authority in support of the argument of counsel for the appellant that the same distinction should be made in the care required of a railroad when acting strictly as a carrier and the care required as to its station, depots and appurtenances as is made as to an ordinary business house with ref-

erence to the care in running its elevators and the care of floors and stairways and other parts of its premises. This court has held that a business house in the operation of its elevators is held to the same degree of care as any other carrier (*Hartford Deposit Co. v. Sollitt,* 172 Ill. 222; *O'Callaghan v. Dellwood Park Co.,* 242 Ill. 336, and cases cited;) but that in the maintenance and supervision of stairways on its premises a business house is only held to the exercise of reasonable and ordinary care. (*Pauckner v. Wakem,* 231 Ill. 276. See, also, *Kaufman Department Stores v. Cranston,* 258 Fed. 917.) Anything that has been said in any former decision of this court which might be thought to support the contrary conclusion is hereby overruled.''

The same rule has been laid down in *Dire v. Balaban and Katz, Inc.,* 241 Ill. App. 199, 203, and *Kaldunski v. Chicago City Ry. Co.,* 250 Ill. App. 475, 479. Defendant in error insists that the issue of reasonable care was submitted to the jury by instructions given for plaintiff in error and defendant in error. The issue of negligence was submitted, but that did not cure the error that plaintiff in error was held to the duty of exercising the highest degree of care. Defendant in error's instruction number five states: ''The court instructs the jury that while the burden of proof is upon the plaintiff to prove her case by a preponderance of the evidence, still if the evidence preponderates in favor of the plaintiff, though but slightly, that would be sufficient for the jury to find the issues for the plaintiff.'' This instruction has been seriously criticised by the court.

Complaint is made as to other instructions and other errors are pointed out, but as the cause will have to be presented to another jury, doubtless any such errors will be corrected on another trial.

For the errors pointed out, the verdict and judgment of the circuit court is reversed and the cause remanded for another trial.

*Reversed and remanded.*